DONALD GENE MITCHELL *v.* STATE OF INDIANA.

[No. 1276S437.  Filed August 25, 1977.]

*Jeffrey A. Lockwood,* of Anderson, for appellant.

*Theodore L. Sendak,* Attorney General, *Daniel Lee Pflum,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from convictions for rape, Ind. Code § 35-13-4-3, (Burns 1975), robbery, Ind. Code § 35-13-4-6, (Burns 1975), entering to commit a felony, Ind. Code § 35-13-4-5, (Burns 1975) and automobile banditry, Ind. Code § 35-12-2-1, (Burns 1975). Appellant received sentences for these offenses of twenty-one years, ten to twenty-five years, one to five years, and one to five years, respectively. Trial was by jury.

The gravamen of the offenses was that appellant broke into the house of Helen Feight and there sexually assaulted her and took her money. He contends in this appeal that the evidence serving to identify him as the perpetrator of these offenses was wholly insufficient to support the jury verdict. In determining this question we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. In so doing we may consider evidence supporting the verdict without regard to which side produced it. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover* v. *State,* (1970) 253 Ind. 536, 255 N.E.2d 657. Circumstantial evidence is no different than other evidence for this purpose, and standing alone may sufficiently support the convictions.

Here, no single fact proved, standing alone, directly or inferentially establishes the identity of the assailant. The inference that appellant committed these crimes, can be made, if at all, upon the greater part of all the evidence presented by the prosecution and a small part of that presented by the defense. The evidence showed the following.

The place of these crimes was the home of the victim, Helen Feight. It was located in rural Madison County on

Road 750W, one-fourth mile south of State Road 128. The buildings consisted of a house, barn and shed clustered together in the farmyard, separated from the surrounding fields by a fence. The house was located on the north side of the lot. The barn was located to the southeast of the house, and the shed was located to the south of the house. The drive from the road led in the direction of the barn between the house and the shed. Road 750W is a dead-end, gravel road, a lane and a half wide, about a half mile long. Three houses were located on this road. The Feight house was the first on the road; a vacant house was second, and the third, located at the end of the road, was occupied by the Crowder family.

The offenses occurred on the evening of January 17, 1976, at about 9:30 p.m. It was a bitterly cold night and there was deep snow on the ground.

Mrs. Feight testified that her daughter and family visited her that night and watched television. At about 9:10 p.m. all visitors left and she continued to watch television. After a short while she heard a crash in the unlit kitchen. She got up and walked into the kitchen and discovered that the lock had been broken off the back door. A man grabbed her and forced her into an adjoining bedroom. Her clothes were torn off and her glasses knocked off. She was then raped in her bed. She screamed and tried repeatedly to push him away. The man then took ninety dollars from her and threatened to strike her with her walker if she did not give him more money. Within moments another man came in the back door, demanding money and also raped her. He then left. Mrs. Feight was very elderly, and at trial was unable to give any description of her assailant, and was unable to state whether she had been raped twice by the same man or had been raped by two different men. She further testified that the crimes had occurred between 9:30 and 9:40 p.m.

As part of her testimony, shown relevant later in the trial, she stated that she and the assailant or assailants were the only persons to have been on the bed and on the linens with

which the bed was then made up. She also testified that shortly before Christmas of 1975 a man, driving a green car, came to her house, parked his car in her yard and received permission from her to hunt in her woods.

Mr. Oscar Lawson, son-in-law of Mrs. Feight testified that he went to Mrs. Feight's house on the Monday before Christmas and there saw a four- or five-year old green Buick parked in the yard, and that this was either an Electra 225 or a LeSabre.

Lawrence Crowder, who lived at the end of Road 750W testified that he and his family returned home from a visit to relatives at 9:30 p.m. on January 17, 1976. On passing Mrs. Feight's house on his way home, he saw a large green Buick parked on the road south of the driveway to Mrs. Feight's house. The witness continued on to his house, got a coat, and left for work on the third shift. He passed Mrs. Feight's house again at 9:35 or 9:40 and again saw the car, and copied its license number. The car belonged to appellant. It was a green 1971 Buick Electra 225.

The investigating officer testified that he went to the Feight residence the day following the crime. There he found a pillow case on the bed with a bloodstain on it, and footprints leading through the deep snow, from the back door of the house up close to the barn, past the shed, and along the fence into the roadway. The last print was partially obliterated by a tire track on the roadway, and this print led directly into the roadway at a point near the fence and where appellant's green Buick had been parked the night before. The footprints were fresh and were consistent with appellant's shoe size. The bloodstain on the pillow was shown by further testimony to be type A, the same type as appellant's blood type. Mrs. Feight's blood type was type O.

Appellant gave the officer a statement in which he acknowledged driving his car to a tavern, arriving there at 8:00 or 9:00 p.m. on the same evening, and leaving the tavern in his car at 1:00 a.m. Defense witnesses put appellant in his car at 9:55 and 10:15 p.m.

From an assessment of the evidence, including appellant's own statement and the statement of his wife and brother-in-law that appellant was in his car and driving it minutes before and minutes after the short period of time during which the crimes occurred, the jury could reasonably have inferred that appellant drove his car to the Feight residence and parked it outside on the road. And from an assessment of the evidence, including that which showed the precise period of time during which the crime occurred and the remoteness of the place of the crime and the bitter cold night on which it occurred, complemented by the evidence of the pre-Christmas visit by the hunter in the green Buick of the same vintage and type as appellant's car, of the footsteps in the snow, of the bloodstain, (which complementing evidence admittedly could raise the probability of guilt only to the slightest degree when considered alone) the jury could reasonably have inferred that appellant left his car and walked to the door of the Feight residence at the time that door was broken open, and did break into the house and sexually assault its lone occupant. We have considered the testimony of the victim that she did not know whether there were two men or one and such testimony does not render the evidence insufficient. Upon the foregoing combination of facts, the jury was warranted in concluding beyond a reasonable doubt that appellant committed these crimes.

We do note on the face of this record that appellant received separate sentences for automobile banditry and the three offenses to which it was subsidiary, namely, rape, robbery and entering to commit a felony. Automobile banditry did merge with those offenses and the judgment and sentence on that count must be vacated. *Coleman* v. *State*, (1975) 264 Ind. 64, 339 N.E.2d 51. We remand the case to the trial court with instructions to do so. The convictions for rape, robbery and entering to commit a felony are however affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 366 N.E.2d 183.