**Paul MITCHELL Appellant,**

**v.**

**STATE of Indiana Appellee.**

**No. 29S00–8701–CR–57.**

Supreme Court of Indiana.

July 18, 1989.

David M. Adams, Richards, Adams, Boje & Pickering, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was charged by information with the crimes of murder, robbery, and confinement. A separate count seeking the death penalty was added. A trial by jury was had, verdicts of guilty were returned, and corresponding judgments were entered. The jury was reconvened for the penalty phase of the trial. The death penalty was recommended. The trial judge considered the recommendation, but imposed sentences of sixty years for murder, I.C. 35–42–1–1, 35–50–2–3; twenty years for confinement, a Class B felony, I.C. 35–

42–3–3, 35–50–2–5; and forty years for robbery, a Class A felony, I.C. 35–42–5–1, 35–50–2–4. All sentences were enhanced to the maximum. I.C. 35–38–1–7. All sentences were ordered served consecutively for a total of one hundred twenty years. I.C. 35–50–1–2(a).

The claims on appeal relate to: (1) sufficiency of evidence of guilt; (2) denial of a defense motion to be permitted to refrain from notifying prosecutor on motions seeking payment of legal fees and defense costs, (3) admissibility of items seized from appellant's truck pursuant to a warrant, (4) the rejection of defense instructions on offenses of theft and reckless homicide, and (5) the legality of the enhanced and consecutive sentences.

### (1)

■ The gravamen of the offenses was that appellant captured and transported a man from one place to another by use or threat of force while armed with a gun, robbed him by placing him in fear resulting in serious bodily injury, and shot and killed him. Appellant contends that the evidence serving to identify him as the perpetrator of these offenses was insufficient to support the verdicts. In determining this question we do not weigh the evidence nor resolve question of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State* (1970), 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Feggins v. State* (1977), 265 Ind. 674, 359 N.E.2d 517.

■ The evidence tending to show appellant's guilt is circumstantial in character. Circumstantial evidence is no different than other evidence for this purpose and standing alone may sufficiently support the convictions. *Mitchell v. State* (1977), 266 Ind. 656, 366 N.E.2d 183.

■ The evidence and reasonable inferences therefrom showed that Richard Lowe was night manager of the Rodeway Inn in Indianapolis, working during the early morning hours of January 22, 1985. At 5:00 a.m. the hotel was found locked, the front desk was abandoned, safe deposit boxes and drawers had been broken and thrown around, and Lowe and $4600 were missing. The last transaction on the cash register occurred at about 1:30 a.m. Lowe's car remained parked near the entrance to the hotel.

The body of Richard Lowe was found at the edge of a road in adjoining Hamilton County at 5:30 a.m. that same morning. His hands had been taped together behind him with white adhesive tape, and he was dead of a single .22 caliber contact gunshot to the head behind the ear. He had been shot at this place while kneeling on the ground. There on the roadway were two fresh oil stains six inches apart and situated in line with the body of the victim and his tie and cigarettes. These stains were like those made by the car driven by appellant alone on an early morning excursion between 2:00 a.m. and 4:00 a.m. At 7:30 a.m., appellant had possession of the money stolen from the motel. A roll of white adhesive tape was recovered later in the day from his truck. Appellant owned a .22 caliber gun which had been left at Lowe's abode two months before the murder.

Appellant was a former employee of the Rodeway Inn, the sole beneficiary of a document purporting to be Lowe's will, and the beneficiary of two of Lowe's life insurance policies. The two had engaged in sexual acts. Lowe had given appellant large sums of money over a period of several months, had attempted suicide, and had asked appellant to kill him. Several months before the killing, while in a bar, appellant offered to pay a man three thousand dollars to kill Lowe so that he could inherit his money. He had also said to a girl friend that in the event of Lowe's death he would inherit enough money for them to marry.

The evidence was such that from it the jury could reasonably conclude to a certainty beyond a reasonable doubt that appellant, armed with a .22 caliber weapon and motivated by a desire to obtain the money

from the hotel, the life insurance companies, and the victim's estate, did rob, confine, and kill Lowe as charged. A rational trier of fact could reasonably deduce to the requisite degree of certainty from the evidence as a whole, including the damage to the interior of the hotel office, the fact that the victim's car was left at the hotel lot after the robbery, the manner in which the victim was bound, the distinctive oil stains, the manner of the killing, the coincidence in time and place of appellant's early morning drive and his close friend's victimization, appellant's possession of the money in the bag from the motel and of the roll of tape, and the relative times of the various events, that appellant drove alone to the hotel, robbed the victim of the money in his charge, bound and abducted the victim, and removed him in the same car to a remote location where he did shoot and kill him.

Appellant argues that the evidence showed only that appellant may have been present when the criminal conduct occurred or may have had an opportunity to have engaged in such conduct, such evidence having been long condemned as insufficient. *Phelps v. State* (1983), Ind.App., 453 N.E.2d 350. Here, as in *Mitchell*, 266 Ind. 656, 366 N.E.2d 183, the combination of facts and the inferences which they permit, which tie appellant to these crimes, reinforce one another and as a composite show more than mere opportunity or presence. This combination warranted the jury in concluding that these were appellant's crimes.

### (2)

Appellant was indigent and counsel was appointed for him. Defense counsel asked to be relieved of the responsibility of serving the State with copies of defense motions for counsel fees, employment of experts, and the like. The request was denied. On appeal it is argued on the broadest and most general of bases that the requirement provided the State with a continuous source of information on the course of the defense which would not have been available to the State if appellant had not been indigent.

■ The rights of the poor to equal access to the courts and to have counsel appointed for their defense in criminal prosecutions is fundamental. *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). However, absolute equality in extending these rights is not required, and a Court can subject them to rational regulation and restriction, so long as access to the courts remains meaningful and counsel is left with the ability to provide legal assistance which falls within the reasonable norms of professional representation.

■ The trial court is vested with the authority to determine when and in what manner public funds shall be made available to the defense for its purposes. First, the trial court, in requiring notice to the State, could have reasonably believed that a correct judicial determination of such motions is facilitated by subjecting them to the adversarial process. Secondly, the type of information concerning defense tactics contained in these defense motions is routinely available to the State through broad reciprocal discovery. Upon these two considerations it is reasonably to be concluded that the burden placed by the trial court upon the defense was modest and rationally based, and did not impermissibly impinge upon the right to access to the court to make a defense or to have the assistance of legal counsel.

### (3)

A large amount of cash and a bank bag which had been present in the Rodeway Inn prior to the robbery was seized by the police from appellant's truck pursuant to a search warrant. Suppression of the seized items was sought on the basis that the testimony given before the issuing judge was deficient in two respects: first, that factual assertions in it that there were contraband drugs in the truck were based upon statements to that effect made by appellant to a police officer during custodial interrogation without *Miranda* warnings; and second, that it failed to provide a substantial basis for the issuing judge's determination that probable cause existed.

The warrant that was requested had two goals. One was to search the truck for drugs; the other was to search it for physical evidence relating to the robbery, confinement, and murder. Regarding the presence of contraband drugs in the truck, the officer testified that appellant was a user of drugs and had admitted having drugs in his truck. The entire balance of testimony sought to connect appellant and the truck to the Lowe crimes. It detailed that appellant had worked with and was thus acquainted with Lowe, that appellant had persuaded Lowe to make him a beneficiary of the will, that a Camel cigarette was found at the murder scene and a pack of same were visible in the truck, whereas the victim smoked another brand, that appellant had owned guns and death occurred by shooting, and that there were tire tracks at the murder scene which were similar to those which would be made by the tires on appellant's truck.

■ Appellant first contends that his statement that he had drugs in his truck was the product of custodial interrogation without an advisement of rights and that this illegality tainted the entire affidavit, requiring suppression of the fruits of the warrant. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Advisements to safeguard the privilege against self-incrimination are required prior to custodial interrogation. Custody for this purpose results when the suspect to be interrogated is being deprived of his freedom of action in some significant way. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Appellant was an active paid informant for the state police and county police for several years before the events comprising those here occurred. He had engaged in controlled buys of drugs and had been arrested as a cover several times, and consequently had a close personal relationship with officers. After the body of Lowe was found, two state police officers approached him as he was escorting a girl to her car in a parking lot of a night club. Appellant knew them and they asked him if he would stay around and wait for another officer and talk to him. Appellant agreed to do so. Officer Russell, whom he also knew well, arrived in an unmarked police car and asked him to get in to talk. After he was in, Russell said that they needed to talk to him at the sheriff's office about the Lowe murder. Appellant replied that there was no problem, that he would be happy to. Russell then asked him what he wanted to do about his truck which was parked in the lot. Appellant replied that he wanted to drive it to the office. Russell said he wanted appellant to go with him, and appellant said that was no problem but he didn't want them around his truck. The officer asked: "What's the matter, have you got any dope on you or guns or anthing?" Appellant replied: "I got dope on me and in the truck," and handed Russell a small plastic bag of white powder.

In *Oregon v. Mathiason, id.,* Mathiason went on invitation to a police station where he entered an office and sat across the desk from an officer who pointedly interrogated him, without warnings, about his participation in a crime, lying with regard to finding Mathiason's fingerprints. After five minutes, Mathiason admitted his guilt, was given *Miranda* warnings and confessed. Mathiason had not been in custody when sitting in the office and being subjected to interrogation. Here, appellant was in a police car with an officer, and there were two others in another car in the lot. The presence of those other two provides no basis upon which to distinguish this situation, since Mathiason was in a police station and would have been aware, as appellant must have been, that other officers were near by and could be summoned in short order. In addition, and indicative of lesser restraint here, the conversation leading up to appellant's admission was even shorter than the time span of the conversation leading up to Mathiason's admission of guilt. More importantly, here appellant was well acquainted with these officers, had worked with them, had been paid by them, and was accustomed to talking with them in their cars and offices, and was therefore less susceptible to official pressure. The restraint upon appellant

as he sat in the car and made this admission concerning drugs in his truck was no greater than that to which Mathiason was subjected; and, consequently, appellant's statements, like those of Mathiason, were not procured in violation of the privilege against self-incrimination.

■ Appellant next claims that the officer lacked firsthand knowledge of the facts which he provided the issuing judge in his testimony. The officer who testified was personally acquainted with appellant. Some of his testimony was based upon personal knowledge. The testimony that appellant was beneficiary of Lowe's will was revealed in the testimony as having its basis in information supplied by two independent sources, namely Lowe's brother and a named police officer. The testimony regarding the autopsy, the crime scene at the motel and the roadside crime scene was revealed in the testimony as having its basis in information supplied by named police officers who had conducted those investigations and had firsthand knowledge. In each instance, the testifying officer stated his opinion that these sources were truthful and reliable. An affidavit or sworn testimony such as this, which is based upon the statements of officers engaged in the investigation and shown to be based upon their actual knowledge, is not deficient, despite its hearsay character. *Spears v. State* (1978), 270 Ind. 12, 383 N.E.2d 282; *Ferry v. State* (1970), 255 Ind. 27, 262 N.E.2d 523. Such testimony can satisfy the statutory standard for establishing probable cause to support a search warrant. *Wells v. State* (1979), Ind.App., 397 N.E.2d 1250; I.C. 35–33–5–2. The affidavit as a whole was sufficient in form and substance to serve as a basis for the issuance of a search warrant for appellant's truck, and the fruits of that search were properly admitted.

(4)

■ Appellant tendered two instructions defining the lesser offenses of theft and reckless homicide. The trial court refused them. In determining the propriety of instructions on lesser included offenses, the court must first look to the statutes and charging instruments and then to the evidence. *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208. Reckless homicide is a criminal offense involving the killing of a human being and is distinguished from murder and manslaughter by its lesser culpability. I.C. 35–42–1–1, 35–42–1–3, 35–41–2–2. It is therefore, in general, an offense included in both murder and manslaughter. I.C. 35–41–1–16. The murder count alleged the appellant knowingly killed Lowe by shooting him. This pleading is not cast in such a manner as to exclude reckless homicide as a possible lesser and included offense. The evidence here, however, shows that the victim was shot in the back of the head in the middle of the night along a country road after being kidnapped and robbed and while his hands were taped behind his back. There is a dearth of evidence from which a jury could conclude that the state of mind of the person who inflicted that fatal wound was merely reckless. The refusal to give an instruction on reckless homicide was clearly warranted by the evidence.

■ Theft, in general, involves the dispossession of property of another and is distinguished from robbery in that it is accomplished without a show of force. It is, in general, an offense included within robbery. The robbery count alleged a knowing taking of property from the person or presence of Lowe by placing Lowe in fear. This pleading does not exclude theft as a possible lesser and included offense. The evidence here, however, shows violent forceful conduct against Lowe from his place of work to the place of his assassination. There is a dearth of evidence from which a jury could conclude that the person or persons who committed these crimes stole something by stealth or artifice. The refusal to give an instruction on theft was clearly warranted by the evidence.

(5)

■ In enhancing appellant's sentences and in ordering the sentences to be served consecutively, the trial judge gave aggra-

vating weight to appellant's history of criminal activity pursuant to I.C. 35–38–1–7. Appellant claims that, in so doing, the trial judge improperly went beyond his prior felony and misdemeanor convictions and considered that he did have cocaine in his possession and may have sold some. In determining a sentence, a trial judge may consider all of the facts of the case brought out before him, including evidence of criminal activity. *Kelly v. State* (1983), Ind., 452 N.E.2d 907. The trial court's order is not manifestly unreasonable because he considered criminal activity included in the evidence.

Finally, appellant claims that his convictions and sentences for both murder under Count I and Class A robbery under Count III cannot stand. He argues that it is impermissible to use the evidence of the single gunshot wound to the head of the victim to satisfy the element of serious bodily injury for Class A robbery and to satisfy the shooting and killing element of murder. In *Malott v. State* (1985), Ind., 485 N.E.2d 879, a burglar fired shots in quick succession at Munnier, a store owner, in fleeing from the store, and Munnier received two gunshot wounds. Malott was convicted and sentenced for both attempted murder and burglary resulting in bodily injury. This Court reasoned:

> The attempted murder charge and the enhanced burglary charge are predicated upon the same underlying injury which appellant inflicted upon Munnier. To impose punishment for the same injurious consequences sustained by the same victim and inflicted by appellant's singular shooting is violative of both federal and state double jeopardy prohibitions.

*Id.* at 886. Here Lowe died of a single gunshot wound to the head. The only other injuries sustained by Lowe which were discovered by the physician making the autopsy were superficial ones to the face and knees from striking the gravel as he fell forward from a kneeling position after being shot. These would not constitute a separate bodily injury.

We therefore hold that appellant's conviction and sentence for Class A robbery must be vacated. Since there was no allegation of a deadly weapon in the robbery information, the cause is remanded with instructions that a conviction and sentence for Class C robbery be entered in its stead. In all other respects, the convictions are affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.