D.H. FLEENOR, Appellant,

v.

STATE of Indiana, Appellee.

No. 41S00–9106–PD–433.

Supreme Court of Indiana.

Sept. 3, 1993.

F. Thomas Schornhorst, Bloomington and Brent Westerfeld, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana and Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a judgment denying a petition for post-conviction relief filed pursuant to the Indiana Rules of Procedure for Post–Conviction Remedies. Appellant Fleenor was convicted upon two murder charges in the shooting deaths of his estranged wife's mother and stepfather. The jury recommended death. The judge determined three death aggravators, namely, double murder, lying in wait and intentional killing in the course of a felony. The judge imposed the sentence of death. The convictions and sentence were affirmed on direct appeal. *Fleenor v. State* (1987), Ind., 514 N.E.2d 80.

In this appeal from the judgment denying post-conviction relief, appellant makes the following claims: 1) error of the judge at the murder trial in making and permitting the prosecutor to make statements to jurors degrading the death sentencing role of the jury; 2) error in permitting the jury to receive information of the imprisonment alternatives to the death sentence and the application of good time credits; 3) defective jury instructions at both the guilt and penalty phases; 4) error in permitting prejudicial use of evidence of appellant's future dangerousness; 5) error in permitting improper comment of prosecutor at closing statements; 6) error in utilizing the intentional killing aggravator after obtaining a conviction for a knowing killing; 7) error in predicating sentence upon theory of murder during the course of a burglary; 8) insufficient evidence of lying in wait as to both victims; 9) invalid aggravators render balancing of them invalid; 10) inadequate findings of the sentencing court; 11) error in denying motion to amend post-conviction petition; and 12) ineffective counsel at trial, death sentencing and on direct appeal.

In a post-conviction hearing, the burden of establishing grounds for relief by a preponderance of the evidence rests with the petitioner. Ind.Post–Conviction Rule 1(5). The judgment of the trial court carries presumptive validity following affirmance on appeal, and the party seeking review, here the petitioner, bears the burden of showing invalidity. *Remsen v. State* (1986), Ind., 495 N.E.2d 184. The trial judge, as trier of fact, is the sole judge of the weight of the evidence and the credibility of the witnesses. On appeal, petitioner stands in the position of one appealing from a negative judgment. In such cases, it is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Hoskins v. State* (1973), 261 Ind. 291, 302 N.E.2d 499.

## ISSUE I

While Fleenor's direct appeal was pending, the U.S. Supreme Court held that the Eighth Amendment precludes a sentence of death where the sentencing jury is led to believe that responsibility for determining the appropriateness of death rests elsewhere. *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In Indiana the jury does not determine the sentence, but only makes a recommendation with respect to it. The judge decides whether to impose either imprisonment or the death penalty. If the jury recommendation is against death, death is appropriate only if the facts justifying a death sentence are so clear and convincing that only death is reasonable. *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731; *Jackson v. State* (1992), Ind., 597 N.E.2d 950. This Court has recognized that *Caldwell* grounds may operate to foreclose a death sentence under the Indiana system. *Burris v. State* (1990), Ind., 558 N.E.2d 1067; *Wallace v. State* (1990), Ind., 553 N.E.2d 456.

Premised upon *Caldwell*, in this, appellant's first state post-conviction proceeding, appellant claims that his death sentence cannot stand because repeated misleading statements of the prosecutor during voir dire and the penalty phase final argument, and similar misleading statements of the judge during voir dire, undermined the jury's sense of responsibility in making its sentencing recommendation, in violation of the Eighth Amendment. The post-conviction judge, upon consideration of the evidence, concluded that the claim was waived and was without merit. On appeal, the state has focused entirely on the merits of the issue. Therefore, it is appropriate that we consider the merits. *Burris*, 558 N.E.2d 1067.

█ During voir dire examination of prospective jurors, the judge, the prosecutor, and defense counsel probed attitudes toward the death penalty. This examination constituted a first introduction for most to many legal principles and processes. First responses to the initial question of whether a juror could consider the possibility of the death penalty for murder typically range from (1) the emphatic no, through (2) the tentative no and the tentative yes, to (3) the emphatic yes. All prospective jurors had to be introduced for the first time to the idea that their role would be to recommend the penalty to the judge, who would in turn decide upon the penalty. The judge's questions commonly took the following form:

> [I]t's the Courts responsibility ultimately, you make a recommendation to the Court, the Court either follows it or doesn't, and then the Court ... can impose the death penalty, not impose the death penalty, and can give a sentence ... with a wide range of possibilities. You're not ... charged with that responsibility in this case.

> \* \* \* \* \* \*

> Now your recommendation is just that. It's a recommendation it is not binding on the Court.... The Court may ignore it; the Court can accept it. In the final analysis the decision will be up to the Court.

This and similar extemporaneous statements of the judge are consistent with roles defined for judge and jury, but are not entirely accurate. They do not inform the jury that the judge is required to give due consideration to the recommendation in deciding upon the sentence. Judges are of course not free to ignore the recommendation.

The voir dire questioning by defense counsel was generally very complete and accurate. It commonly took the following form:

> [I]t has been explained to you, the Jury does make a recommendation to the Court, recommending that the death penalty be imposed or recommending that the death penalty not be imposed. And that is certainly a factor that the Court would consider.

The voir dire by the trial prosecutor commonly took the following form:

> It would be up to the Judge to make the final determination, and your action

would simply be to recommend or not recommend death penalty.

\* \* \* \* \* \*

[Y]ou make that recommendation to His Honor, ... he accepts that recommendation for consideration only. You understand that he is not bound by it. He listens to what you have to say, but he is the final judge.... His Honor, the Judge, imposes the penalty. You don't have to worry about that....

\* \* \* \* \* \*

[T]he key word ... is recommendation.... [T]hat, maybe, takes some of the burden off of you....

\* \* \* \* \* \*

[I]t is only a recommendation.... He listens to the evidence.... He also has a presentence report.... [H]e juggles all those things or whatever you want to say about it, and he makes that decision. So, I want to make it clear to you, you're not saying, as a Jury member, We impose the death penalty.

In closing argument, defense counsel suggested that a mistake could be made in the trial and told the jury that if they recommended execution they would have to live with that the rest of their lives. He concluded by declaring that the prosecutor wanted to kill Fleenor but that the fate of Fleenor was in the hands of the jury. In responding to the argument of defense counsel concerning the possibility of a mistake, the trial prosecutor stated that the jury recommendation was not a final decision, that it was subject to the final decision of the trial judge and appeal to the Indiana Supreme Court and the federal courts. He concluded by stating that the life of D.H. Fleenor was not in their hands but in the hands of criminal justice.

Following the above closing argument, the trial judge gave the following formal instructions in the sentencing charge:

Although your recommendation is not binding upon the Court, it is a very valuable contribution.... The court shall make the final determination of the sentence, after considering the jury's recommendation.... The law in no circumstances requires you to recommend the death penalty.... The unsworn statements or comments of counsel on either side of the case should not be considered as evidence in the case. It is your duty to determine the facts from the testimony and evidence admitted by the court and given in your presence, and you should disregard any and all information that you may derive from any other source.

The issue that we must decide is whether the information repeatedly supplied to the jury in the foregoing events so diminished the sense of responsibility of the jury in fulfilling its sentencing duty as to violate the Eighth Amendment. Appellant points to *Martinez Chavez*, 534 N.E.2d 731, wherein this Court stated that the role of the jury is critical and should be heeded when the jury recommends against the death penalty. In *Huffman v. State* (1989), Ind., 543 N.E.2d 360, 372, we approved the action of the trial court in repeatedly telling the jury that their recommendation was of utmost importance. In *Brewer v. State* (1981), 275 Ind. 338, 417 N.E.2d 889, this Court posited that the jury's recommendation is a very valuable contribution to the process. Appellant is critical because of the lack of such strong statements concerning the value of the jury recommendation in the information supplied to the jury at his trial. The complaint is not unjustified. The trial court's advice would have been better had some such statements been interjected.

The information supplied in voir dire must, however, be taken in context. Voir dire is an initial meeting of court and counsel with a group of citizens. Legal language is specialized. Communication in this setting can be difficult. Understanding is partial. For those who are selected to serve as jurors, more precise understanding is reached through experience of the trial itself.

The information supplied in the final summations of counsel must also be considered in its proper place. Jurors become aware of the role of attorneys as advocates

during the trial. Most jurors understand the difference between evidence, statements of counsel, and admonitions of the court. Following the deliberation and rendition of the verdicts of guilty, the jury would be fully aware of the nature and importance of its recommendation. Defense counsel's exaggeration that the defendant's life was in the jurors' hands would have been received as such, and the trial prosecutor's reference to appellate review of the decision acts as a counter thrust having little or no bearing on the jury's recommendation role.

Thus, we think that the importance placed upon the sentencing phase of the trial as it unfolded, together with the trial court's formal instructions, ameliorated any tendency of the deficiencies or shortcomings in voir dire examination, the summations, and the jury instructions, to dilute the sense of jury responsibility. We find no significant danger of an Eighth Amendment violation, and affirm the trial court's rejection of this ground for relief on its merits.

### ISSUE II

Appellant alleged as ground for relief that final penalty phase instruction 7, and the final summation by the trial prosecutor upon the subject matter of the instruction, served to deny him a fair sentencing hearing before the jury, in violation of the Eighth Amendment and Fourteenth Amendments of the United States Constitution and the corresponding provisions of the state constitution.

The instruction informed the jury of the possible terms of imprisonment for the crime of murder, of the possibility that two sentences for years may be ordered concurrent or consecutive, and of the possibility that a prisoner may be released on parole after serving one-half of a term of imprisonment. In final summation the prosecutor addressed the express terms in the instruction, did the necessary arithmetic, and concluded:

And if we give him good time, we give him 20 years in, folks. That's possible; I don't think it's realistic, but it's possible. He could get 20 years.

There were no objections to the instruction or to the final summation. The post-conviction court concluded that the question had been waived and was without merit. The State addresses the issue solely on its merits. It is appropriate therefore that this Court do so also.

The general rule is that a jury should be instructed only upon matters which are relevant to their function, and that alternative sentencing possibilities and possibilities of post-conviction diminution of sentence are not relevant since Indiana juries do not fulfill a sentencing function. *Debose v. State* (1979), 270 Ind. 675, 389 N.E.2d 272. However, the rule is subject to an exception where an instruction may dispel speculation and facilitate a proper verdict. *See Feggins v. State* (1977), 265 Ind. 674, 359 N.E.2d 517. Such an instruction may be general in nature, *Brown v. State* (1987), Ind., 503 N.E.2d 405, or it may be specific, *Feggins*, 265 Ind. 674, 359 N.E.2d 517. At the penalty phase of a capital case, where there is reason to believe that the jury will engage in speculation over the extent of alternative penalties, it is within the discretion of the trial judge to make the jury aware of them. *Burris v. State* (1984), Ind., 465 N.E.2d 171. The policy underlying the exception is that when jury speculation is inevitable because of some particular event, it is better to entrust the jury with complete and accurate information. The information supplied by the challenged instruction and the trial prosecutor's final summation was accurate.

In *Burris,* a capital case, it was the defendant who sought the potential benefit that stems from the knowledge such an instruction imparts to the jury of the upper range of possible terms of imprisonment. Here the subject matter covered by the challenged instruction arose in the evidence in the first phase of the trial. It was therefore not error to give this instruction. It follows that it was proper for counsel to argue to the jury from it. An instruction informing the jury of the executive pardon power was given in a capital case pursuant

to state law, and was declared consistent with the Eighth and Fourteenth Amendments. *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). We are not persuaded that that the trial court was in error in rejecting this ground for relief on its merits.

## ISSUE III

Appellant alleged as a ground for relief that eight instructions given at his trial were erroneous and served to deny him a fair determination of guilt and jury recommendation of sentence guaranteed by Article 1, Sections 12, 13, and 19 of the Indiana Constitution and the Fourteenth Amendment to the U.S. Constitution. The post-conviction judge concluded that the grounds had been previously adjudicated, had been previously waived, and on the merits were not fundamentally unfair. We address the merits.

### A. The Voluntary Manslaughter Instruction

■ The first instruction addressed the subject of voluntary manslaughter as an included offense of murder. It stated:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony. The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. To convict the defendant, the State must have proved each of the following elements; that the defendant knowingly or intentionally killed another human being. If the State failed to prove each of these elements beyond reasonable doubt, you should find the defendant not guilty. If the *defendant* [sic] did prove each of these elements beyond a reasonable doubt, and you further find that the defendant did the killing while acting under sudden heat, you should find the defendant guilty of voluntary manslaughter, a Class B felony. The crime of voluntary manslaughter is distinguished from the charged crime of murder by the inclusion, in voluntary

manslaughter, *of the element* of a sudden heat.

(Emphasis supplied). Clearly the instruction is erroneous and confusing wherein at one point it misstates the burden of proof, and at another point considers sudden heat as an element of the crime. *Palmer v. State* (1991), Ind., 573 N.E.2d 880. However, due to our belief that a reasonable juror would have immediately recognized the misstatement on the burden of proof as an inadvertent and patent error and consequently discounted its express message, and to the lack of an evidentiary predicate for the instruction, we find the error harmless beyond a reasonable doubt. *See generally Jackson v. State* (1991), Ind., 575 N.E.2d 617.

In *Roark v. State* (1991), Ind., 573 N.E.2d 881, this Court considered the failure to instruct on voluntary manslaughter:

An instruction on voluntary manslaughter is supported if there exists evidence of sufficient provocation to induce passion that renders the reasonable person incapable of cool reflection. We have repeatedly held that any appreciable evidence of sudden heat justifies an instruction on voluntary manslaughter.

*Id.* at 882 (citations omitted). In the present case, appellant Fleenor bought the murder weapon at 4:00 p.m.; broke into the victims' home about 7:00 p.m.; appeared to the victims after they entered their home at 7:30 p.m.; and shot and wounded his father-in-law. Appellant ordered his wife, Sandy, and the three children present, one of whom was twelve years old, to sit down. Appellant then granted his mother-in-law permission to aid her husband. As she proceeded to do so, appellant shot her in the head, killing her. Within an ill-defined, short period of time, he shot the wounded man in the head, killing him. There is no sufficient predicate here for a manslaughter instruction and no impairment to the fairness of the determination of guilt in giving an erroneous and confusing one.

### B. The Burden of Proof Instruction

■ Appellant complains of two instructions which told the jurors:

If the State proves beyond a reasonable doubt that the defendant knowingly killed Billy Harlow, then to find the defendant not responsible by reason of insanity, you must find the defendant has proved by a preponderance of the evidence that he was insane at the time the offense was committed.

In *Pritchard v. State* (1967), 248 Ind. 566, 230 N.E.2d 416, relied upon by appellant, this Court interpreted Article 1, Section 19 of the Indiana Constitution to forbid an instruction in a criminal case that bound the conscience of the jury to a finding of guilty in the event it found certain facts. These instructions do not so bind the conscience of the jury; this instruction requires the jury to employ a particular burden of proof.

### C. The Jury's Basis for Decision Instruction

Appellant next complains of an instruction that stated that the jury "must" base its decision upon the evidence that is presented and not be motivated by certain post-conviction procedures. This instruction does not bind the conscience of the jury; this instruction requires the jury to follow procedures necessary to its proper function.

### D. The Flight Instruction

Appellant next complains of instructions that told the jury that flight of a person or an attempted escape from jail while accused, if proved, would not be evidence of guilt, but "is, however, evidence of consciousness of guilt." Similar instructions have been approved in the past. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290. However, this Court has more recently recommended against the use of such instructions in particular cases. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111. Appellant argues that these instructions bind the conscience of the jury to draw the stated inferences that are in turn consistent only with guilt. The instructions did not carry that message. These instructions protect the accused by prohibiting the jury from drawing a direct inference of guilt from such evidence, and require only that such

evidence be given a particular relevance. The weight of the evidence is left to the jury, and the jury is not bound in any way to make the stated inferences.

### E. The Prior Inconsistent Statement Instruction

■ During the guilt-innocence phase of the trial the judge instructed the jury that a prior inconsistent statement of a witness was the kind of evidence that may be considered in deciding the weight to be given the testimony of the witness "as well as substantial evidence of the guilt of the defendant." This instruction was based on *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482 (recently overruled in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649). *Patterson* recognized as substantive evidence certain hearsay statements. The Court of Appeals considered this instruction in *State v. Willis* (1990), Ind.App., 552 N.E.2d 512, and concluded that it did not produce fundamental error.

Appellant argues that the use of the word "substantial" strongly implies that such evidence alone is sufficient to sustain a finding. Persons trained in the law might discern such an implication. However the jury would not do so, but would instead discern the message that such a statement can have real or actual worth as evidence of guilt, which can be duly weighed along with all the other evidence. That message alone did not impair the fairness of trial on guilt-innocence.

### F. The Voluntary Intoxication Instruction

■ At the guilt-innocence phase of the trial, the judge instructed the jury as follows:

Voluntary intoxication is a defense only to the extent that it negates specific intent.

Appellant complains that the instruction shifted the burden of proof to him, because it did not state where the burden of proof for the defense lay, and was in close proximity to the instruction that placed the burden of proof of insanity upon him. He also

complains that the instruction failed to define specific intent. The instruction is not erroneous or incomplete on this basis. In *Melendez v. State* (1987), Ind., 511 N.E.2d 454, this Court held that while voluntary intoxication is entitled to the appellation of "defense," it operates by negating the essential element of intent. If the jury is properly instructed upon the substantive crimes charged, including their intent elements, and the burden is maintained upon the State to prove such crimes beyond a reasonable doubt, an instruction which places the issue of intoxication before the jury is sufficient. Taken as a whole, the instructions, including those defining the intent elements of murder as "intentional" and "knowing," were sufficient, and no burden was thereby shifted to appellant. We find no likelihood that this instruction rendered the trial process of determining guilt unreliable or fundamentally unfair.

### G. The Murder Instruction

■ Preliminary Instruction 7 defined murder for the jury by quoting the statute, including the felony murder provisions. This latter part of the instruction was not repeated in final instructions. Appellant complains that the preliminary instruction tainted the jury's deliberations. Since the final instructions explicitly defined the elements of the offenses that were required to be proven as only those for non-felony murder, no error in the jury's determination of guilt could have resulted.

### H. The Sympathy/Prejudice Instruction

■ In the instructions during the penalty phase, the trial court stated:

Neither sympathy nor prejudice for or against either the Victim or the defendant in this case should be allowed to influence you in whatever verdict you may find.

This precise type of instruction has been held appropriate in the penalty phase of capital trials. *Woods v. State* (1989), Ind., 547 N.E.2d 772, *on reh'g*, 557 N.E.2d 1325. Appellant's complaint that the instruction undermined the jury's consideration of evidence of mitigating circumstances can fare no better than did that of Woods.

### ISSUE IV

■ Appellant alleged as a ground for relief that it was error to permit the prosecution to use the opinion of a court appointed psychiatrist, Dr. Gordon Brown, regarding appellant's future dangerousness, and to present jury argument about that opinion at the guilt and sentencing phases of the trial. Appellant relies upon federal case law construing the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and the corresponding provisions of the Indiana Constitution. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988); *Powell v. Texas*, 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1990). The post-conviction court ruled that the claim was waived, barred, and without merit. The privilege against self-incrimination bars the State from subjecting the defendant to a psychiatric examination without a warning of rights. However, the bar is waived once the defendant introduces psychiatric evidence in support of an insanity defense. *Buchanan v. Kentucky*, 483 U.S. 402, 422–23, 107 S.Ct. 2906, 2917–18, 97 L.Ed.2d 336, 355 (1987). Even if the Fifth Amendment claim is waived, the Sixth Amendment claim of a deprivation of counsel may still be available if the known scope of the examination is exceeded.

In Texas, the state in which the above cited U.S. Supreme Court cases arose, the jury decides upon the sentence of death. In Indiana, the jury only recommends whether or not the death sentence should be imposed. In Texas, the prosecution must prove the "probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society"; this is an express and necessary finding for an affirmative decision. Tex.Code Crim.Proc.Ann. art. 37.-071(b)(1) (West 1992). In Indiana, the issue does not exist, because such probability is not an element of the crime of murder, the defense of insanity, or any of the death

aggravators. Evidence of such probability would be irrelevant when proving those matters. Such probability can be, however, an element of mitigation at the penalty phase of a capital trial under the catch-all provision, Ind.Code § 35–50–2–9(c)(8).

 Dr. Brown was appointed, as mandated by statute, when appellant filed his plea of insanity. At the examination, with the knowledge of defense counsel, appellant produced the evidence upon which Dr. Brown based his opinion. At trial, the defense had the burden of proof on the insanity defense, and defense counsel drew forth that resulting opinion in great detail. Appellant suffered from a recognized personality disorder of long standing, characterized by a long and persistent history of drug and alcohol misuse, numerous arrests, poor marital adjustment, poor social adjustment, various incarcerations, loss of work, a long history of aggressive and compulsive conduct, fighting, and recklessness. Dr. Brown expressed the opinion that such disorders represented personality patterns, personality characteristics, and personality quirks, and did not involve disrupting or shattering of the personality or the person's ego. On cross-examination, the trial prosecutor elicited the following testimony from Dr. Brown:

Q. Now, when you uh talked to the defendant and he did not express little or of any guilt or remorse?

A. That is correct.

Q. What's the prognosis for the defendant's condition for improvement?

A. In my opinion, and in psychiatry and statistically, in general, the prognosis for such a person is considered very guarded.

Q. It is unlikely his condition will change?

A. It is unlikely, yes.

Q. And is it your opinion that given the opportunity, he will continue to involve himself in similar behavior in the future?

A. Yes.

The testimony is relevant to show the complete nature of appellant's disorder, and was entirely proper for this purpose. In final argument at the guilt phase, the trial prosecutor made a lone reference to Dr. Brown's opinion:

We don't have someone who's fragmented—who's lost touch with reality. His ego and his personality was not ruptured. That's the testimony of Dr. Brown. He also said he was unlikely to improve. He will continue to involve himself in similar conduct, in the future, given the opportunity.

The evidence was incorporated into the jury sentencing hearing by reference, and referred to in cross-examination of mitigation witnesses who testified that there was a low probability of future dangerousness. The State may properly introduce rebuttal evidence tending to disprove mitigating circumstances shown by the defendant's evidence. *Woods*, 547 N.E.2d 772. The trial prosecutor then argued in closing at the penalty phase that appellant would pose a threat to guards and to others if he were to escape prison, but made no mention of the Dr. Brown's opinion.

In conclusion, we find that the evidence of Dr. Brown's opinion about the probability of future violent conduct was not employed by the State to satisfy any burden that it had to prove appellant guilty or to prove any of the aggravating circumstances warranting the death penalty. The scope and exploitation of it by the prosecution was slight. Furthermore, the pre-trial examination, which provided the basis for the opinion, took place at appellant's request and within the knowledge of his counsel. Counsel knew that the nature of any mental disorder or behavioral problem would be explored in detail, including any persistent and continuing patterns of violent conduct. Appellant then introduced this evidence at the guilt phase, and first brought the same subject matter to the attention of the jury at the penalty phase in producing mitigation evidence. In light of the foregoing, we affirm the conclusion of the trial court that the use to which the State put the evidence was consistent with the rights afforded by the Fifth and Sixth Amendments and other provisions relied

upon. We expressly find no possibility at all of an intolerable danger that the jury's recommendation was unreliable on this basis or was the product of unfairness as a result of the argument to the jury on the subject.

## ISSUE V

■ Appellant alleged as a ground for relief that the trial prosecutor committed misconduct in closing arguments that deprived him of a fair trial and sentencing proceedings. The post-conviction court adjudged that the ground was waived and without merit. The appellate response of the State is singularly on the merits. Generally, the right to a fair trial prevents the trial prosecutor from urging the jury to decide upon improper and irrelevant reasons. *Tucker v. Francis*, 723 F.2d 1504 (11th Cir.1984). Concerning this legal claim this Court has said:

> In reviewing a charge of prosecutorial misconduct, this Court first determines whether there was misconduct by the prosecutor, and second, considers whether that misconduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. This position is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant.

*Smith v. State* (1987), Ind., 516 N.E.2d 1055, 1063 (citations omitted). As a premise for this ground, appellant cites statements and comments of the trial prosecutor concerning: 1) the danger appellant poses to others (guilt and penalty phases); 2) personal belief concerning the evidence (guilt phase); 3) a local judge's belief that appellant was "mean" (guilt phase); 4) the standard for insanity (guilt phase); and 5) Fleenor's past criminal history (penalty phase). We find sufficient support for appellant's claim only with respect to the first of these. However, we conclude that it did not under all the circumstances place the appellant in grave peril either in the guilt phase or the penalty phase. Consequently, we are not persuaded to overturn the decision of the post-conviction court on this basis.

## ISSUE VI

■ Appellant claimed as a ground for post-conviction relief that his trial on the death penalty information, alleging as one of the aggravating circumstances that he intentionally killed the victims while committing burglary, was barred by state and federal guarantees against double jeopardy. U.S. Const. amend. V; Ind. Const. art. I, § 14. The trial court rejected this claim on its merits. We do so also.

Appellant argues that his penalty phase conviction of a "knowing" killing in the guilt phase was an implied acquittal of the greater offense of "intentional" murder. Therefore, according to the appellant, his conviction at the successive proceeding upon the allegation of the aggravating circumstance of an "intentional" killing while committing burglary was barred by protections of the double jeopardy clause. We do not agree that the second process is barred.

In this case appellant Fleenor was convicted of burglary upon the charge that he did break and enter a dwelling house with the intent to commit murder. In the direct appeal we concluded that proof of that burglary, as an element of the number one death aggravator, I.C. § 35–50–2–9(b)(1), was not barred. *Fleenor*, 514 N.E.2d 80. The knowing murder of which appellant stood convicted and the intentional murder proved as an element of the number one aggravator do not bear the relationship of greater and lesser offense, i.e., one is not an included offense in the other, but are instead the same offense. I.C. § 35–42–1–1(1). The conviction of appellant at the guilt phase of the knowing murders did not result in an implied acquittal; it resulted instead in a conviction. In light of this conclusion and the conclusion reached in our prior opinion in this case on direct appeal, we find that it was proper and consistent with the guarantees of the prohibitions against double jeopardy, to prove an

"intentional" killing at the capital penalty phase.

## ISSUE VII

Appellant claimed as grounds for post-conviction relief that the burglary, of which he stood charged and convicted, could not lawfully serve as an element in the predicate for the death penalty. The post-conviction court ruled that this claim had no merit, and was *res judicata*, as it had been raised, argued and decided on direct appeal. *Fleenor*, 514 N.E.2d 80. We conclude that as this issue was decided against appellant in the direct appeal, it was properly resolved by the post-conviction court as *res judicata*. *Grey v. State* (1990), Ind., 553 N.E.2d 1196.

## ISSUE VIII

As a ground for post-conviction relief from the sentence of death, appellant alleged that the evidence of one of the aggravating circumstances was insufficient. The trial court found the claim to be without merit. The State based the alleged aggravator on I.C. § 35-50-2-9(b)(3), which requires that the murder be committed by lying in wait. In *Thacker v. State* (1990), Ind., 556 N.E.2d 1315, this Court considered this provision and concluded:

> We therefore construe this statutory aggravator as intending to identify as deserving consideration for the penalty of death those who engage in conduct constituting watching, waiting and concealment with the intent to kill, and then choosing to participate in the ambush upon the arrival of the intended victim.

*Id.* at 1325. In resolving this claim we apply the same standard applicable when determining the sufficiency of evidence to convict. *Id.* at 1323. We examine the evidence tending to support the verdict or finding, and reasonable inferences therefrom, without weighing it or determining its credibility, and from this viewpoint determine whether it constitutes substantial evidence of probative value from which a reasonable trier of fact could determine the aggravator beyond a reasonable doubt.

The evidence is recited in detail in the opinion upon direct appeal. Appellant, armed with a pistol, broke and entered the house and concealed himself. The two women, the man, and the three children arrived. As they settled into their routines, appellant appeared and unleashed deadly force against the man, shooting him in the stomach and disabling him. While the others were kept at bay and helpless, appellant shot one of the women, and again shot the man, both in the head, killing them. This was murder by ambush. *Davis v. State* (1985), Ind., 477 N.E.2d 889.

## ISSUE IX

Based upon the challenges to the validity of the aggravating circumstances considered in the last three sections of this opinion, appellant claims entitlement to a new sentencing determination. In light of the rejection of the issues in those sections, there is no merit to this claim.

## ISSUE X

Appellant alleged as a ground for post-conviction relief that the trial judge in making his final decision on sentencing had: 1) failed in several respects to properly weigh the factors that were relevant; and 2) reached his decision before the sentencing hearing, thereby failing to comply with the requirements of the statute and case law in supporting his decision to impose the death penalty.

In support of these defects, appellant presented the text of the original sentencing order, in addition to the testimony of defense counsel that prior to the final sentencing hearing, the judge called them into chambers and told them he had reached a decision to impose the death sentence unless they had something else to show. The post-conviction judge rejected this ground on the bases of prior adjudication and that it had no merit.

In the direct appeal, this Court examined the text of the judge's sentencing order in great detail in determining whether the sentencing order properly complied with the letter and spirit of the law. Thus, the issue of whether the trial court correctly

weighed the factors that were relevant has been previously addressed on direct appeal, *Fleenor*, 514 N.E.2d at 88–89, and the post-conviction court was correct in declaring it *res judicata*. *Grey*, 553 N.E.2d 1196.

Upon consideration of the new additional evidence from the post-conviction hearing, and having upon such basis reexamined the remaining issue, and we again conclude that with this additional evidence in the record, the record still does not show that the trial court reached its final sentencing decision before hearing all evidence and arguments of counsel. Consequently, we will not disturb the decision of the post-conviction court, rejecting this ground.

### ISSUE XI

■ Appellant claims that the post-conviction court committed error in denying his motion to amend the petition by adding a newly discovered evidence ground, and in refusing to consider such evidence in ruling upon his petition. The motion was filed about a week before the long-standing hearing date and after extended pre-trial preparation and refinement of issues. At the hearing, while refusing to permit the evidence to be introduced upon the issues, the court permitted it to be presented in full, with some cross-examination by the state.

Indiana's post-conviction remedies rule governing amendment to post-conviction relief petitions provides, in part, that "the petitioner shall be given leave to amend the petition as a matter of right." P.–C.R. 1(4)(c). The purpose of this rule of liberal amendment is to encourage the fullest possible consideration of post-conviction issues in the first such petition that a prisoner may file, to the end that subsequent petitions be rendered unnecessary. *Neeley v. State* (1978), 269 Ind. 588, 382 N.E.2d 714, *overruled on other grounds, German v. State* (1981), Ind., 428 N.E.2d 234.

As a ground for post-conviction relief, evidence must satisfy the following requirements:

> [T]hat there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice …

P–C.R. 1(1)(a)(4). Petitioner has the burden to establish this and other grounds by a preponderance of the evidence. P–C.R. 1(5). The nine point legal test has remained static since stated by Judge Bobbitt in *Tungate v. State* (1958), 238 Ind. 48, 147 N.E.2d 232.

The post-conviction judge permitted appellant to make a complete record of the evidence supporting this ground. It consisted of an affidavit and live testimony of Angela Harlow, who was the daughter of appellant's wife Sandy and the adoptive daughter of her grandparents, the two victims. Angela Harlow, who was twelve years old at the time of the crime, was an eyewitness to the slayings, and testified at the initial trial, as did two other eyewitnesses, Sandy and Billy Harlow.

The primary part of this proffered evidence shows the following. Angela Harlow regularly saw appellant from the time she met him in June 1982, until the killings in December 1982, and had positive feelings towards him. Appellant was well-behaved and well-groomed when visiting her home. However, at the time of the killings, appellant was unkempt, and while not appearing to be drunk or under the influence of drugs, acted peculiar and wild. Between July 1982 and December 1982, Angela Harlow saw her grandfather, Bill Harlow, run out to his driveway, confront appellant parked in his vehicle, and shout at appellant, saying he would kill him. At the scene of the December crimes, Angela Harlow heard her grandfather tell her grandmother to go get a gun under the mattress. At the time, her grandfather was on the floor, having been shot in the abdomen.

Assuming, without deciding, that the post-conviction court was in error in overruling the motion to amend, we find the error was without prejudice or harm to appellant in the determination of his guilt or sentence, or in the determination of grounds for post-conviction relief. The evidence supporting the ground is lacking. There is no probable likelihood that this

evidence, if produced on retrial would result in different verdicts, different sentences, or a different post-conviction result. *Emerson v. State* (1972), 259 Ind. 399, 287 N.E.2d 867.

The positive feelings of the witness toward appellant were generated when Angela Harlow was a twelve-year-old girl. As she also stated, she was not experienced in judging the attitudes of men toward her. This evidence would not add appreciably to the evidence at trial showing appellant's playfulness with children, or his capacity for good naturedness and cleanliness. The evidence of the violent animosity of the victim, Bill Harlow, towards appellant during the break-up of the marriage of appellant and Sandy is extensively chronicled and without substantial contradiction. The fact that Bill Harlow told his wife, Nyla Jean, to go get the gun, as he lay wounded on the floor, would have little weight, particularly in light of the total lack of evidence that Nyla Jean responded to the suggestion. Appellant shot her in the head as she kneeled on the floor over her wounded husband. The ruling of the post-conviction court carried no harm or prejudice warranting reversal of the post-conviction judgment.

### ISSUE XII

As the final ground for post-conviction relief, appellant alleged that his trial and appellate counsel had rendered ineffective legal assistance, contrary to the guarantee of the Sixth Amendment to the United States Constitution. The burden upon this ground is no different, and as with others, it rests upon the petitioner. With respect to this issue, this Court has said:

> In determining whether a defendant has been denied the effective assistance of counsel, the reviewing court must determine whether, in light of all the circumstances, the acts or omissions of which a defendant complaints [sic] are outside "the wide range of professionally competent assistance." A strong presumption exists that counsel rendered adequate legal assistance. Even if a defendant establishes that his attorney's acts or omissions were outside the wide range of competent professional assistance, he must also establish that counsel's errors had an adverse effect upon the judgment. Moreover, it is not necessary for the reviewing court to "address both components of the inquiry if the Defendant makes an insufficient showing on one" or to "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."

*Aubrey v. State* (1985), Ind., 478 N.E.2d 70, 73 (citations omitted). The trial court concluded that appellant did not satisfy his burden of proof on this issue.

In dealing with issues 1–11 in this appeal, this Court has noted that the post-conviction court, in most instances, found procedural default without finding any error. Appellant would concede that since we have addressed the substance of each instance passing upon the findings of procedural default, review here of the rejection of the ineffective assistance ground by the post-conviction court is largely obviated. *Propes v. State* (1990), Ind., 550 N.E.2d 755. There remains the allegation that defense counsel failed to develop an adequate record in support of mitigating circumstances and the penalty phase hearing.

█ Appellant argues that trial counsel failed to call available lay and expert witnesses who could have supplied valuable information regarding his background, upbringing, life experiences, his mental health and the impact of his long term abuse of alcohol and drugs.

At the sentencing hearing, the guilt phase evidence was incorporated. It included appellant's testimony and that of the two psychiatrists, who were of the opinion that while appellant was not insane, he was nevertheless suffering from a recognized personality disorder. Appellant's wife provided testimony at the hearing supporting the mental disturbance and intoxication mitigator. A clergyman, who became acquainted with appellant when appellant was a teenager and who had coun-

**154**

selled with appellant, provided family background information, and supplied the opinion that appellant would lead a useful and productive life in prison. A second clergyman, who had known appellant for six years and who had special training and experience in counselling adults and juveniles, testified that appellant showed real remorse, was capable of compassionate feelings, and would do well in prison. A member of the State Board of Corrections, with a doctorate in sociology and special training and experience in counselling alcoholics, testified in detail about the debilitating effects of long term abuse of alcohol upon the mind and will and capacity to form criminal intent. A brother-in-law testified to acts of kindness of appellant toward his three children, and that appellant's personality deteriorated quickly at age sixteen, when appellant began to use alcohol and began to engage in conduct towards others that was mindlessly vicious and brutal while under the influence of alcohol. Appellant's mother testified that alcohol possesses appellant in a way unknown to normal people. She elaborated in detail and implored the jury not to kill her son.

At the post-conviction hearing, appellant presented a number of lay and expert witnesses who, appellant contends, would have provided valuable information regarding his background, upbringing, life experiences, his mental health and the impact of his long term abuse of alcohol and drugs, if these witnesses had been called at the sentencing hearing. The witnesses that defense counsel did call touched upon these same subjects and the testimony of the psychiatrists was also available to be considered. Defense counsel produced witnesses who, for the most part, knew appellant for what he was from considerable personal contact, and who provided valuable mitigating evidence. Defense counsel was confronted with two homicides committed in the presence of an adult and three children, three of whom testified for the prosecution. The decision to raise the defense of insanity was a reasonable one, and provided evidence of mitigating circumstances. There are points of lapse when

defense counsel should have been more zealous in curbing the borderline positions taken by the trial prosecutor, and there were points of excellence as well. When the lawyering of appellant's defense counsel is viewed, as it must be, within all of the attendant circumstances, it was entirely satisfactory, and fulfilled the intendment of the Sixth Amendment.

In light of the conclusion that defense counsel did not provide deficient representation on behalf of appellant, the need to review the trial court's decision upon the merits of the issue of appellate counsel's representation is totally obviated. *Propes,* 550 N.E.2d 755.

The judgment is affirmed.

SHEPARD, C.J., and GIVAN, DICKSON and KRAHULIK, JJ., concur.