Donald Lee JACKSON, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 24S00–9306–CR–597.

Supreme Court of Indiana.

Dec. 16, 1993.

Terrance W. Richmond, Milan, for appellant.

Pamela F. Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Donald Lee Jackson, Jr. appeals the sentence imposed on him for murder. We affirm.

Jackson and Stuart Kennedy kidnapped Michelle Seagraves from her apartment complex in Columbus, Ohio, so that they could use her car in robbing the Peoples National Bank in Moores Hill, Indiana. Seagraves was brutally murdered. She was strangled, bludgeoned on the head with a blunt object, and shot in the back of the neck.

This Court set aside the death penalty imposed on Jackson after his trial for murder. *Jackson v. State* (1992), Ind., 597 N.E.2d 950. The trial judge subsequently sentenced Jackson to sixty years for murder, Ind.Code Ann. § 35-42-1-1(2) (West 1986), and ordered that the penalty be served after Jackson finishes the 100 years imposed earlier for kidnapping and robbery resulting in serious bodily injury.

*I. Request for Mitigation Specialist*

 While the case was awaiting resentencing on the murder conviction, Jackson moved the trial court for funds to engage a mitigation specialist and a clinical psychologist. The court denied his request, and Jackson contends this was error.

This Court outlined the principles pertinent to the appointment of experts in *Scott v. State* (1992), Ind., 593 N.E.2d 198. Among other things, we observed that the argument for providing experts at public expense is strongest in cases involving the most severe penalties. Indeed, on one recent occasion we concluded that refusal to provide an expert in a capital case was reversible error. *Castor v. State* (1992), Ind., 587 N.E.2d 1281 (error to refuse appointment of expert where expert made preliminary determination that statutory mitigator applied to capital defendant). *Castor* is not compelling authority here, of course, because while the State initiated this murder prosecution as a capital case, by the time of Jackson's resentencing it no longer was a capital case.

Because it had been a death penalty case, however, the original sentencing proceeding was necessarily more extensive than it would have been if the death penalty had never been sought. Jackson asked that the evidence from that original sentencing be admitted for consideration on remand, and it was. The trial court relied on the evidence presented by both sides at the former hearing, including the following. A representative of the Ohio company which employed Jackson testified at length about Jackson's good employment record. Two of Jackson's cousins testified favorably about Jackson's life experiences. Jackson's brother testified about his efforts at building a family. Jackson's aunt testified about acts of kindness she had observed. Jackson's brothers and a co-worker also testified favorably about him. Finally, the Sheriff of Franklin County testified that Jackson had been a "good prisoner" while in jail awaiting trial.

Although the trial court prohibited the State from presenting any evidence during

resentencing, it allowed Jackson to provide new testimony and additional reports. Jackson's mother testified that her son was handling himself very well in prison. Asked whether any circumstances had changed in Jackson's life since the last sentencing hearing, she noted that he was now in prison and said: "I don't know how they could change." His brothers testified about their continued relationship with him and his adjustment to prison. The Franklin County Sheriff testified that Jackson had not been any problem during his return to the jail for resentencing.

Jackson also called Stacey Michael, a mitigation specialist, who appeared notwithstanding the trial court's denial of funds to pay her. She presented a psychologist's report on Jackson from the Indiana State Prison. She also offered a favorable letter written by the warden of an Ohio penitentiary in which Jackson had been incarcerated for aggravated robbery shortly before his participation in the Seagraves murder. Finally, Jackson himself testified.

Altogether, then, Jackson was able to present the trial judge with a voluminous record, both from the earlier proceeding and the current one, describing the kind of person Donald Jackson has been. The judge acted within his discretion and the dictates of *Scott v. State* when he denied the request for funds to hire a mitigation specialist and a psychologist to prepare additional information.

## II. A Second Presentence Report

■ Jackson contends that the trial court erred in not ordering a second presentence investigation when it resentenced him, citing Ind.Code Ann. § 35–38–1–8 (West Supp.1993), which requires the preparation of a presentence report to assist in sentencing. The trial court, of course, had the benefit of a presentence report when it first sentenced Jackson and that report was still available. As for developments since the original sentencing, counsel for Jackson indicated at the second hearing that he intended to present evidence about Jackson's prison experiences subsequent to the preparation of the first report. This

evidence was introduced. Under these circumstances, we conclude that the trial court did not err in failing to order a second report.

## III. Was This a Proper Sentence?

Jackson alleges three grounds for error relating to the sixty year sentence itself.

■ First, Jackson contends that sentencing him for both murder and robbery resulting in serious bodily injury violates the Double Jeopardy Clause. U.S. Const. amend. V. The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after a conviction, and (3) multiple punishments for the same offense. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

■ Multiple penalties may be imposed for "the same offense" where the will of the legislative body to do so is clear. *Whalen,* 445 U.S. at 693, 100 S.Ct. at 1438. Thus, legislative intent is central to a Double Jeopardy inquiry, and courts have used a "same-elements" test to make this analysis. The classic formulation of this test has been as follows: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

■ This *Blockburger* "same-elements" test is but a rule of statutory construction to aid in determining whether the legislature intended multiple punishments. *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). "[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial,

of cumulative punishments pursuant to those statutes," *id.*, so long as that is the legislature's intent. Moreover, there are a number of relationships which do not of themselves satisfy the "same-elements" test. For instance, overlapping proof between two crimes does not violate double jeopardy. *United States v. Solomon*, 753 F.2d 1522 (9th Cir.1985). Indeed, a substantial overlap in the proof offered to establish the different crimes is allowed. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The government may even pursue subsequent prosecution where, to establish an essential element of the offense charged in that prosecution, it must prove conduct which constitutes an offense for which the defendant has already been prosecuted. *United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (overruling *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)).

 Jackson cites cases of this Court issued before the decision six months ago in *Dixon* which involved murder or attempted murder and some other offense, such as robbery, which becomes a higher penalty felony when it results in bodily injury. In *Malott v. State* (1985), Ind., 485 N.E.2d 879, for example, we held that when an attempted murder conviction and a robbery resulting in serious bodily injury both rely on but a "single act of shooting," the Double Jeopardy Clause permits only a simple class C robbery conviction. By contrast, we have suggested that evidence showing non-superficial injury separate from the gunshots might sustain multiple punishments consistent with the Double Jeopardy Clause. *Mitchell v. State* (1989), Ind., 541 N.E.2d 265 (class B robbery not permissible when evidence shows single gunshot wound to head and other injuries are only superficial).

Whether the distinction drawn by *Malott* and *Mitchell* can be sustained in light of *United States v. Dixon* we need not resolve to dispose of Jackson's contention. Certainly our legislature intended to create two crimes by enacting statutes prohibiting robbery and prohibiting murder, and the statutes in question meet the *Blockburger* same-elements test. Furthermore, there

were a great many injuries inflicted on Michelle Seagraves before she finally died. A pathologist observed that Seagraves was strangled with a ligature around her neck, and bleeding in the neck showed that when the ligature was applied she was still alive. The strangulation obviously occurred before the gunshot wound to the back of the neck, inasmuch as the gunshot would have caused immediate death. The pathologist also noted multiple injuries to the head with a blunt instrument, though he could not determine whether any of these were fatal. These multiple injuries inflicted on Michelle Seagraves were not "a single act" for purposes of our analysis in *Mitchell* and *Malott.*

 Second, Jackson claims that his punishment was manifestly unreasonable. Ind. Appellate Rule 17(B). The circumstances of this crime, described in our original opinion, *Jackson*, 597 N.E.2d at 954–55, place it among the most calculating and brutal crimes. In light of the evidence about the offense and the offender, we cannot conclude that the trial court's sentence is manifestly unreasonable.

 Third, Jackson contends that the trial court erred in not finding as mitigating circumstances his prior work history and the support available to him from family and others. We note that Judge Stewart mentioned these facts in his sentencing from the bench, and we conclude that his refusal to make a written finding of mitigating circumstances represented a conclusion that they did not merit reduction of sentence. Even if it was error not to find mitigating circumstances, we cannot say that the sentence was erroneous in light of the strength of the aggravating circumstances.

Accordingly, we affirm the trial court.

DeBRULER, GIVAN, DICKSON and SULLIVAN, JJ., concur.