**Theodore WETHINGTON,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9501–PC–13.

Court of Appeals of Indiana.

Aug. 31, 1995.

Transfer Denied Oct. 25, 1995.

Susan K. Carpenter, Public Defender, Richard Denning, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

Theodore Wethington was convicted of robbery,[1] as a Class A felony, kidnapping,[2] as a Class A felony, attempted murder,[3] as a Class A felony, and auto theft,[4] as a Class D felony. He appeals the denial of his petition for post-conviction relief, raising the following issues:

1. Whether the denial of post-conviction relief despite newly discovered evidence was error?

2. Whether Wethington's multiple convictions violate double jeopardy provisions of the Indiana and United States constitutions? We vacate the auto theft conviction and otherwise affirm the trial court's denial of Wethington's petition.

### FACTS AND PROCEDURAL HISTORY

On March 18, 1987, Leah Clayton was abducted from a grocery store parking lot. She had unlocked her driver's side door and

---

1. *See* IC 35–42–5–1 (1986 Supp.)

2. *See* IC 35–42–3–2 (1982 Ed.)

3. *See* IC 35–41–5–1 (1982 Ed.), IC 35–42–1–1 (1982 Ed.)

4. *See* IC 35–43–4–2.5 (1986 Supp.)

placed her purse and groceries inside, when Wethington shoved her into the car, wrested the keys from her hand, and told her, "I'm scared, I just robbed a bank, and as soon as we get out of town I'll let you go." *Record* at 166. Leah repeatedly begged Wethington to release her, pleading that she was seventy-two years old and recovering from heart surgery. Wethington ignored her pleas and drove off with her in the car.

Several times Leah attempted to lower the window and call for help. Each time Wethington ordered her to get down and threatened to kill her. He repeatedly struck her head with a tire tool. Wethington then demanded all of Leah's money and again threatened to kill her. She gave him approximately $60.00, and he continued driving around. He later stopped the car, pinned her against the door, and choked her; he then beat her head again with the tire tool, pushed her out of the car, and drove away.

Leah sustained serious injuries including head lacerations, a crushed hand, a bruised neck, a detached retina, temporary blindness in one eye and optic nerve damage.

At trial, Leah identified her attacker as appellant Theodore Wethington. The State introduced a hair sample found in Leah's car. The State's expert witness testified that forensic tests performed on the sample did not exclude Wethington and that the hair could have been his.

In support of his petition for post-conviction relief, Wethington submitted new evidence consisting of DNA analysis showing the hair did not belong to him. He also claimed that his multiple convictions contravened the double jeopardy clauses of the Indiana and United States constitutions. The post-conviction court denied relief.

## DISCUSSION

### I. POST–CONVICTION RELIEF BASED ON NEW EVIDENCE

■ Wethington first contends that the post-conviction court erred when it found that newly discovered DNA hair analysis evidence would not likely produce a different result on retrial. In post-conviction proceed-ings, the petitioner must meet his burden of proof by a preponderance of the evidence. Ind.Post–Conviction Rule 1(5); *Fleenor v. State* (1993), Ind., 622 N.E.2d 140, 142. An appeal from the denial of post-conviction relief is an appeal from a negative judgment. *Id.* To succeed, the petitioner must show that his evidence leads only to a conclusion opposite that reached by the trial court. *Id.* On appeal, the court neither reweighs the evidence nor judges witness credibility. *Jones v. State* (1989), Ind., 544 N.E.2d 492, 494. We consider only the probative evidence and reasonable inferences supporting the post-conviction court's judgment. *Wickliffe v. State* (1988), Ind., 523 N.E.2d 1385, 1386. New evidence merits retrial where the petitioner demonstrates that the evidence "would probably produce a different result." *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 121. The granting of a retrial is within the trial judge's discretion. *Id.*

■ Wethington argues that the hair analysis evidence was crucial because Leah's identification of him was weak. He claims her identification was suspect because her vision was affected both when her glasses were knocked off during the attack and when the beating resulted in blood in her eyes, a detached retina and optic nerve damage. Leah, however, observed Wethington during the entire commission of the offense, which lasted at least thirty minutes, including that time before her glasses were knocked off and before she sustained her injuries. Three times she unequivocally identified Wethington as her attacker: once within a photo array, later in a line-up, and again at trial.

Wethington claims Leah's initial description of his blue trousers as beige at trial, and her physical description of him during initial police questioning in which she missed his age, height, weight and beard, further supports his contention. Despite her initial description, Leah immediately corrected herself without prompting regarding the color of Wethington's trousers. Although Leah missed perfect numerical measurements of Wethington's age by three years, height by three inches, and weight by twenty-five pounds, her description of him was not unreasonably inaccurate. Finally, Leah's claim

that Wethington had a beard was substantiated by his driver's license photograph.

The hair sample was not pivotal evidence at trial. It was never conclusively determined to be Wethington's, and the state's forensic scientist testified it could have come either from Wethington or from someone else. Additionally, in pronouncing Wethington's guilt, the trial court expressly based its decision on witness credibility and made no mention of hair evidence.

The trial court concluded that the newly discovered evidence would not likely produce a different result on retrial. Wethington has failed to show that such evidence leads only to a contrary conclusion.

## II. DOUBLE JEOPARDY

Wethington next contends that his convictions for both robbery as a Class A felony and attempted murder, and for both robbery and auto theft, violate the double jeopardy clauses of the Indiana and United States constitutions.

■■■ The State argues Wethington waived review of this issue by failure to timely raise it on direct appeal.[5] An appellant waives an issue that was available but not presented on direct appeal. *Cornelius v. State* (1991), Ind.App., 575 N.E.2d 20, 21, *trans. denied.* An exception to this rule arises when the error is fundamental. *Capps v. State* (1992), Ind.App., 598 N.E.2d 574, 577, *trans. denied.* Fundamental error is error that, if uncorrected, would deny a defendant fundamental due process. *Babbs v. State* (1993), Ind.App., 621 N.E.2d 326, 329, *trans. denied.* A defendant may raise a double jeopardy issue in a post-conviction proceeding even if he failed to present the issue on direct appeal because a double jeopardy violation constitutes fundamental error. *Odom v. State* (1995), Ind.App., 647 N.E.2d 377, 379.

## A. ROBBERY AS A CLASS A FELONY AND ATTEMPTED MURDER

Wethington contends that his conviction and sentencing for both robbery as a Class A

felony and attempted murder violates the double jeopardy clause of the Fifth Amendment to the United States Constitution and Article One, Section Fourteen of the Indiana Constitution. He argues that the serious bodily injury used to elevate the robbery to a Class A felony resulted from an act underlying the attempted murder, and that, therefore, he may not be punished for both.

■■■ Double jeopardy protects against, *inter alia*, multiple punishments for the same offense. *Whalen v. United States* (1980), 445 U.S. 684, 688, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715. The initial inquiry for determining whether multiple punishments have been imposed for the same offense is whether the offenses are the same, not whether they spring from the same act. *Elmore v. State* (1978), 269 Ind. 532, 539, 382 N.E.2d 893, 897. The issue is whether the legislature intended to authorize separate punishment for two crimes. *Bigler v. State* (1992), Ind.App., 602 N.E.2d 509, 520, *trans. denied.*

■■■ The "identity of offenses" test under *Bigler* was not violated. *See Jackson v. State* (1993) Ind., 625 N.E.2d 1219, 1222. ("Certainly our legislature intended to create two crimes by enacting statutes prohibiting robbery and prohibiting murder, and the statutes in question meet the Blockburger same-elements test.")

■■■ Where review of the statutory provisions reveals no double jeopardy violation, then the factual bases predicating the State's charges must then be examined. *Fuller v. State* (1994), Ind.App., 639 N.E.2d 344, 348; *Wethington v. State* (1990), Ind., 560 N.E.2d 496, 507. Wethington's robbery charge reads as follows:

"[D]id knowingly, while armed with a deadly weapon, to-wit: A TIRE TOOL take from [Leah] property, ... by putting [her] in fear or by using or threatening the use of force ... which resulted in serious bodily injury to [her], to-wit: SEVERE

---

5. The State also claims that Wethington did not raise double jeopardy in either of his petitions for post-conviction relief; he did in fact raise such in his May 14, 1993 petition for post-conviction relief. *P.C.Record* at 45.

HEAD LACERATION AND A BROKEN HAND,...."

*Record* at 2.

Wethington's attempted murder charge reads as follows:

"[D]id attempt to commit the crime of MURDER, which is to knowingly kill another human being, ... by engaging in conduct, to-wit: Knowingly stricking [sic] [Leah] about the head with a deadly weapon, to-wit: A TIRE TOOL, choking [her] about her neck with his hands, and pushing [her] out of a moving vehicle, which constituted a substantail [sic] step toward the commission of said crime of MURDER, ..."

*Record* at 3.

Wethington argues that the serious bodily injury used to elevate the robbery, namely, the head laceration and broken hand, resulted from the conduct constituting a substantial step charged for attempted murder, namely, the striking about Leah's head with a deadly weapon. He argues that they are the same conduct and that therefore he may not be punished for both, relying on *Bevill v. State* (1985), Ind., 472 N.E.2d 1247.

■ While serious bodily injury is a result, not conduct, a substantial step is conduct, not a result. *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507, 510 (liability of defendant for attempt turns on purpose as manifested through conduct, and if his conduct, in light of all relevant facts involved, constitutes substantial step toward commission of crime, accompanied by necessary specific intent, then he has committed attempt). Wethington's intentional attempt on Leah's life was completed with the first swing of his tire tool in the direction of Leah's head, whether or not it connected. *State v. Smith* (1980), Ind.App., 409 N.E.2d 1199, 1202 (offense of attempted murder was completed with first thrust of defendant's knife).

■ Attempted murder requires an intent to kill. *Burgess v. State* (1984), Ind., 461 N.E.2d 1094, 1097 (attempted murder is a specific intent crime and conviction will not stand absent some evidence the crime was committed intentionally); *Anthony v. State* (1980), 274 Ind. 206, 409 N.E.2d 632, 636

(requirement of culpability within meaning of this section means that there must be an intent to commit the crime). No intent to inflict the serious bodily injury is required to elevate robbery to a Class A felony. *Stark v. State* (1986), Ind., 489 N.E.2d 43, 48 (proof that defendant intentionally caused bodily injury is not required to elevate robbery to Class A; if any injury arises as a consequence of the robbery, the offense is Class A). The serious bodily injury need not afflict the robbery victim herself. *Bailey v. State* (1980), 274 Ind. 318, 412 N.E.2d 56, 59 (where injury to any person other than a defendant is a consequence of accused's conduct in committing a robbery, offense is properly regarded as a Class A felony). The bodily injury need not be life threatening to be considered serious. *Stark v. State* (1986), Ind., 489 N.E.2d 43, 48 (defendant's handcuffing robbery victim with handcuffs too small for victim's wrists, resulting in scars remaining for six months, was sufficient bodily injury to elevate the offense to a Class A felony).

■ Attempted murder requires a certain *act* and a certain *intent*. It does not matter whether the act, the substantial step taken toward the commission of murder, results in any injury whatsoever, so long as it is coupled with the intent to kill. If Wethington had swung his tire tool at Leah's head with the intent to kill her but missed, the substantial step element required for attempted murder would still be satisfied.

In *Bevill*, our supreme court held that punishments for both class A burglary and attempted murder could not stand where each were based on the same injury. The court found no proof of injury except the same stabbing underlying both charges, concluding that both charges therefore rested upon and sought punishment for the same stabbing and the same injurious consequences. "There was only one quick and confined multiple stabbing. Appellant cannot be punished twice for it." *Id.* at 1254. *See also Malott v. State* (1985), Ind., 485 N.E.2d 879, 886 (punishments for both murder and elevated robbery cannot stand where both were based on "a single act of shoot-

ing"); *Mitchell v. State* (1989), Ind., 541 N.E.2d 265, 271 (punishments for both murder and Class B robbery cannot stand where both were based on a single contact gunshot to the head, and other injuries are only superficial).

■ *Bevill, Malott* and *Mitchell,* however, predate the United States Supreme Court's decision in *United States v. Dixon* (1993), —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (overruling *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548), and our own supreme court's decision in *Jackson v. State* (1993), Ind., 625 N.E.2d 1219, 1222. In *Dixon* the Supreme Court held that the government may pursue subsequent prosecution even where, to establish an essential element of the offense charged in that prosecution, it must prove conduct which constitutes an offense for which the defendant was already prosecuted. *United States v. Dixon* [cite]. Following this ruling, our supreme court held in *Jackson* that sentencing for both murder and robbery resulting in serious bodily injury did not violate double jeopardy where multiple injuries inflicted on the victim did not stem from a single act. *Jackson v. State,* 625 N.E.2d at 1222.[6]

■ The defendant in *Jackson* bludgeoned, strangled and shot his victim. The *Jackson* court noted that these multiple injuries were not "a single act." Here, Wethington repeatedly bludgeoned, strangled and pushed his victim from the car. Leah sustained more than one injury, and their infliction was neither quick nor confined: two separate tire tool attacks, a choking and an ejection from a vehicle, all of which took place over the span of approximately half an hour. As in *Jackson,* the multiple injuries Wethington inflicted were not a single act.

Wethington also contends that the same use of a deadly weapon impermissibly elevated the robbery charge because it also formed the basis of the attempted murder charge thus: "... knowingly struck Leah about the head with a tire tool." In support of his contention, he cites *Lyles v. State* (1991),

Ind.App., 576 N.E.2d 1344, which holds that the same use of a deadly weapon cannot be used to elevate both intimidation and battery. *Id.* at 1352. Unlike *Lyles,* the robbery charge here was not elevated to a Class B felony by use of a deadly weapon, as Wethington contends; it was elevated to a Class A felony by the resulting serious bodily injury. Robbery as a Class A felony does not require use of any weapon; it only requires a resulting serious bodily injury. IC 35–42–5–1; *Cape v. State* (1980), Ind., 400 N.E.2d 161, 164 (robbery statute does not require that defendant be armed with deadly weapon in order to be convicted of Class A felony under such statute where serious bodily injury was shown).

**B ROBBERY AND AUTO THEFT**

■ Wethington also contends that the trial court erred in convicting and sentencing him for both theft and robbery because the theft was a lesser included offense of the robbery. The charging instruments show that both charges were predicated on the taking of the same car. If the property underlying a robbery charge is the same as that underlying a theft charge, the theft becomes a lesser included offense of the robbery, and conviction for both counts violates double jeopardy provisions. *Winfrey v. State* (1989), Ind., 547 N.E.2d 272, 275. The State correctly concedes this in its brief. The auto theft conviction and sentence must be vacated.

We affirm the convictions and sentences for robbery, as a Class A felony, and attempted murder, and remand to the trial court with instructions to vacate the conviction and sentence for auto theft.

FRIEDLANDER and CHEZEM, JJ., concur.

---

6. In *Mitchell,* our supreme court anticipated *Dixon* by suggesting that evidence showing nonsuperficial injury separate from the subject gunshot

might sustain multiple punishments without violating double jeopardy principles. *Mitchell v. State,* 541 N.E.2d at 271.