**Brett HOBSON, Appellant (Defendant Below),**

**v.**

**STATE of Indiana, Appellees (Plaintiffs Below).**

**No. 64S00-9403-CR-225.**

Supreme Court of Indiana.

Dec. 31, 1996.

John E. Martin, Law Offices of James V. Tsoutsouris, Valparaiso, for appellant.

Pamela Carter, Attorney General of Indiana, Suzann Weber Lupton, Deputy Attorney General, Office of the Attorney General, Indianapolis, for appellees.

SELBY, Justice.

Brett Hobson ("Appellant") brings this direct appeal from his convictions for Murder; Rape, a Class A felony; Criminal Confinement, a Class B felony; and Criminal Deviate Conduct, a Class B felony. He received the following sentences: sixty years for Murder, fifty years for Rape, twenty years for Criminal Confinement, and fifty years for Criminal Deviate Conduct. The trial court ordered these sentences to be served consecutively, for a total of 180 years. Appellant raises the issues of (1) whether the trial court properly applied the rape shield statute to exclude evidence that the victim was using oral contraceptives; (2) whether the trial court committed error by accepting a general verdict form and sentencing Appellant for both murder and the felonies when the jury was instructed on both knowing or intentional murder and felony murder; (3) whether the prosecutor knowingly presented false evidence, thereby entitling Appellant to a mistrial; and (4) whether prosecutorial misconduct amounted to fundamental error. We reverse the murder conviction; we otherwise affirm the judgment of the trial court.

## FACTS

On October 10, 1992, sixteen-year-old Melissa Draus went to her cousin's trailer to attend a party. Her cousin, Trina Orlando, had invited a number of friends to the trailer for an evening of drinking. Among those attending were the seventeen-year-old Appellant and his sixteen-year-old cousin, Ryan Hobson. A number of the party-goers, including Appellant, had taken LSD earlier that evening. Some time around midnight, the group decided to leave the trailer and visit a local bar. Trina convinced Melissa to stay behind and babysit Trina's children. Appellant and Ryan stayed behind also.

Around 1:30 a.m., Officer Timothy Emmons and a fellow officer responded to a call from a resident of the trailer park. The caller had reported hearing male voices out-

side her window, one of which had said, "Kill the bitch." (R. at 1694.) The officers found no one in the trailer park, but shortly thereafter stopped Appellant and his cousin as they were walking down a nearby highway. Police noticed that both appeared to have blood stains on their clothing. Appellant first indicated that the stains were red paint, and then later claimed to have been in a fight. While talking to one of the officers, Appellant pulled up his shirt to reveal a bite mark on his back and said that he had told "the bitch to put out or get out." (R. at 1799.)

The two were taken into detention because of their intoxication and violation of curfew. Appellant, concerned about the reason that he was being taken in, repeatedly confirmed that he was only to be charged with public intoxication. During his conversation with police at the station, Appellant showed officers the bite mark on his back and commented that "that bitch bit me." (R. at 1746.) Later that morning, a friend of the two boys, posing as the Appellant's sister, came to the detention center and posted bail.

On that same morning, one of Trina's guests found Melissa. Her nude body was lying in the yard outside the trailer. She had been beaten and repeatedly stabbed. One stab wound entered the back of her shoulder and exited the front, another crossed the front of her neck severing her jugular vein and trachea. Forensic testing found semen stains on the victim's clothing. Serological and DNA testing proved that the semen was consistent with that of Appellant's. Blood stains on Appellant's clothes were consistent with the victim's blood.

Appellant and Ryan were arrested a few hours later. Prior to their arrest, Appellant made numerous inculpatory statements and admissions to several friends about how he had raped and stabbed the victim because she had bitten him. After his arrest, Appellant's story changed. Appellant told police that the victim seduced him and that they had consensual sex. He claimed that after he left the room, she became angry that he had not pleased her and followed him down the hall and bit him. He said that he responded by striking her repeatedly. Appellant claimed that he then went outside to cool down, but the victim came out of the trailer, still nude, and threw a knife at him. He next claims to have picked up the knife and lunged at her to scare her away. Appellant admitted that he stabbed the victim with the knife.

While in jail, a third version of Appellant's story emerged. Appellant detailed to cellmate James Patton how he killed the victim by stabbing her from behind. Later, when Appellant learned that Patton intended to share this story with police, Appellant wrote a letter to a friend referring to Patton as a problem that he wished to have "taken care of." (R. at 1919.)

At trial, Appellant told yet another version of events. Appellant claimed that he engaged in consensual sex with the victim. He left to fix a drink, and returned to find her in the hallway engaging in fellatio with Ryan. Moments later he claims to have heard his cousin hitting the victim, and when he attempted to intervene, the victim bit him. Appellant testified that Ryan kicked the victim out of the trailer and stabbed her to death. Appellant told the jury that he initially agreed to take responsibility for the crime because he believed that he could use the bite mark to support a claim of self-defense.

## DISCUSSION

### I.

■ Before and during trial, the trial court applied Indiana's Rape Shield Statute, I.C. § 35-37-4-4, to deny Appellant's request to introduce evidence that the deceased victim was using oral contraceptives. Appellant argues that the trial court improperly applied the Rape Shield Statute and thus erroneously excluded the contraception evidence. Appellant first claims that because the victim was dead prior to trial, the public policy underlying the statute was not served by excluding evidence of her contraception prescription. Appellant argues that the purpose of the Rape Shield Statute is to attempt to prevent the victim's embarrassment at trial and to encourage sexual assault victims to report assaults to the police, and because

Melissa Draus was dead by the time of trial, her possible humiliation was no longer an issue. Appellant further claims that the Rape Shield Statute is designed to prevent only evidence of *prior* sexual activity from admission at trial. Thus, he argues, the Rape Shield Statute should not apply here because oral contraceptives facilitate future sexual activity. Finally, Appellant claims that this contraception evidence was material in that it rebuts the assumption that, because of the victim's age, Melissa Draus was not sexually active.

As to Appellant's first claim, a victim's death does not abrogate the public policy advanced by the Rape Shield Statute, *inter alia,* encouraging victims to report rape. *Jenkins v. State,* 627 N.E.2d 789, 795 (Ind.1993), *cert. denied,* 513 U.S. 812, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994). As to his other claims, they constitute a none-too-thinly veiled attempt to create an inference of promiscuity. Evidence of contraceptive use cannot reasonably be expected to create an inference of an intent to engage in sexual activity *only* in the future. The trial court properly applied the Rape Shield Statute in this case to exclude evidence of Melissa Draus' contraception prescription.

II.

Appellant next challenges the trial court's giving of a general Murder verdict form to the jury when the court instructed the jury on both intentional or knowing murder and felony murder. The information charging murder read:

> David Reynolds, swears under the penalties of perjury as specified by I.C. 35-44-2-1 that the following representation is true: That Brett R. Hobson did, on or about the 11th day of October, 1992, in the County of Porter, State of Indiana, knowingly or intentionally kill another human being, to wit: stabbed to death Melissa Draus, contrary to the form of the statute in such case made and provided against the peace and dignity of the State of Indiana.

(R. at 18.)

Appellant's jury, however, received an instruction on murder which was broader than the knowingly-or-intentionally murder theory contained in the information:

> Instruction No. 3.01—Murder.
>
> I.C. 35-42-1-1.
>
> The crime of murder is defined by statute as follows: A person who knowingly or intentionally kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery commits murder, a felony.
>
> To convict a defendant, the State must prove each of the following elements:
>
> The defendant (1) knowingly or intentionally (2) killed (3) Melissa Draus
>
> or
>
> The defendant (1) killed (2) Melissa Draus (3) while committing or attempting to commit criminal deviate conduct or rape.

(R. at 468.)

Finally, the court gave the jury a verdict form which read: "We, the Jury, find the Defendant, Brett Hobson, guilty of Murder, Count I." (R. at 433.)

Although Appellant was not charged with felony murder, the trial court instructed the jury that it could return a verdict of guilty on the charge of murder under either a murder *or* a felony-murder theory. The court then gave to the jury a general murder verdict form. Appellant argues that, because the crime of knowing or intentional murder has elements different than the crime of felony murder, and because it is unclear of which crime the jury found him guilty, his conviction is defective.

We initially note that Appellant did not object to this instruction at trial, thus he cannot now claim error.[1] *Smith v. State,* 459 N.E.2d 355, 357 (Ind.1984). Nevertheless, "when the record reveals blatant violations of

1. Appellant argues in his reply brief that in Porter Superior Court the parties have little or no chance to object prior to the reading of the instructions to the jury. (Reply Brief at 2-3). The record is contrary to Appellant's assertion and, indeed, defense counsel did raise objections to some jury instructions. (R. at 2928.)

basic and elementary principles, and the harm or potential for the harm cannot be denied, we will review an issue which was not properly raised and preserved." *Id.* (citing *Webb v. State,* 437 N.E.2d 1330, 1332 (Ind. 1982)).

■ The imposition of sentences for both felony murder and the underlying felony constitutes double jeopardy. *Mitchell v. State,* 270 Ind. 4, 382 N.E.2d 932, 933 (Ind.1978). Violations of a defendant's double jeopardy rights constitute fundamental error. *Wethington v. State,* 655 N.E.2d 91, 95 (Ind.Ct. App.1995). In the present case, the general verdict form leaves us no way to determine if Appellant has been convicted of intentional or felony murder, and thus we cannot know if Appellant has been sentenced separately for both the felony and the felony murder charge.

We now address whether the conviction was defective. We have previously ruled that felony-murder and murder "contain elements different from the other but are equal in rank," *Schiro v. State,* 533 N.E.2d 1201, 1208 (Ind.1989), *cert. denied,* 493 U.S. 910, 110 S.Ct. 268, 107 L.Ed.2d 218 (1989), and that to convict a defendant of a crime, the State must prove, beyond a reasonable doubt, each and every element of a crime. *Taylor v. State,* 587 N.E.2d 1293 (Ind.1992). We have also held that when a prosecutor obtains convictions against a defendant for both felony murder and the underlying felony, the defendant may only be sentenced for the greater charge. *Zenthofer v. State,* 613 N.E.2d 31, 35 (Ind.1993). To prevent a double jeopardy violation, a defendant may not be sentenced for both. *Mitchell,* 382 N.E.2d at 933. The violation is avoided by merging the lesser-included offense (the felony) into the greater (felony murder). *Zenthofer,* 613 N.E.2d at 35. If a person kills another while committing or attempting to commit, *inter alia,* rape and/ or criminal deviate conduct, he may be convicted of murder. I.C. § 35–42–1–1.

There are, therefore, two intertwined problems with the conviction of murder in this case. First, the general verdict leaves us with no way to ascertain whether Appellant was convicted on an intentional murder or a felony-murder theory, which, though equal in rank, are different crimes. As different crimes, they required that different elements be proved. It is possible that the jury concluded that the State had only proved felony murder, while the court sentenced Appellant for intentional murder along with the underlying felonies. Appellant cannot be sentenced for a crime that was not proved by the State.

The second problem flows from the first in that we are unable to know whether one or both of the felonies should have been merged into the felony murder charge. Under the facts, it was possible for the jury to conclude that Appellant committed the felonies of rape and criminal deviate conduct *and* that he intentionally or knowingly murdered the victim. The jury could alternatively have found that Appellant killed the victim while committing or attempting to commit rape and/or criminal deviate conduct, and therefore Appellant is guilty of felony murder under one or both of those felonies. As stated above, it is also possible that the jury found one thing while the court found another. Thus, we cannot know whether Appellant was sentenced for both felony murder and the underlying felonies. Also, the two possible convictions carry very different sentences (180 years for murder, rape, criminal confinement, and criminal deviate conduct convictions verses a low of 80 for murder and criminal confinement convictions). By sentencing consecutively on both the murder conviction and on the two potential underlying felonies without specifying which murder theory was used, the court committed error. Because we cannot know if the felonies should or should not have been merged into the murder conviction, there is a possibility that Appellant's double jeopardy rights were violated. We hasten to note that the presence of the two felony convictions, either one of which could be a predicate for felony murder, causes us to come to this conclusion. Our decision to order a new trial on the murder charge might well be different if there had been only one predicate felony. Nevertheless, based on this particular set of facts and circumstances, we must vacate the murder

conviction and remand for a new trial on this count.[2]

III.

Appellant next argues that the prosecutor violated Indiana Professional Conduct Rule 3.3(a)(4), and that the trial court erred by denying his motion for a mistrial based upon such alleged misconduct. Professional Conduct Rule 3.3(a)(4) states that an attorney "shall not knowingly offer evidence that the lawyer knows to be false." Appellant suggests that the prosecutor knowingly sponsored false testimony by putting Appellant's cousin Ryan on the stand. Appellant argues that the prosecutor knew that Ryan had offered conflicting testimony prior to trial, and that the prosecutor had charged him with the same crimes as the Appellant. Thus, Appellant claims, although the prosecutor believed that Ryan committed these crimes, she elected to use Ryan as a witness against Appellant. Appellant asserts that the prosecutor's decision to use Ryan's testimony violates the Rules of Professional Conduct, and that because this testimony placed Appellant in grave danger, he is entitled to a new trial.

In *Poling v. State,* 515 N.E.2d 1074, 1079 (Ind.1987), *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1646, 104 L.Ed.2d 161 (1989), we rejected a similar argument. In that case, we noted that the mere "fact that [the prosecution] had some suspicions of [a witness'] involvement and credibility would not give rise to the conclusion [that the prosecution was] purposely and knowingly fostering perjured testimony." *Id.* at 1079. Although the State found the witness' veracity to be questionable, the State found it necessary to call that witness, since he was the only other living person who was present when the crimes were committed.

Similarly, Ryan is the only other known living person who was present when the crimes in this case were committed. It may be that Ryan told inconsistent stories at various times prior to trial. However, there is nothing in the record to support Appellant's assertion that the prosecutor knowingly placed a witness on the stand who was surely lying. In the instant case, the prosecutor could not have known to an absolute degree of certainty whether Ryan was not speaking openly and honestly about the facts to which he testified. Moreover, the prosecutor did not present the jury with the misconception that the State fully believed Ryan's version of the events. In both opening and closing statements, the State pointed out to the jury that Ryan had also been charged in the crime and questioned the veracity of Ryan's statements on his degree of culpability (R. at 1069, 2855), and during his testimony, the State impeached Ryan on his inconsistent and contradictory statements, (R. at 2935). Furthermore, it makes no sense to provide an incentive for a lone witness to tell conflicting stories and thus make himself unavailable to the prosecutor as a witness. The trial court did not err in denying Appellant's motion for a new trial based on this issue.

IV.

As a final argument, Appellant contends that there was prosecutorial misconduct and that such misconduct amounted to fundamental error. Appellant alleges two specific instances of prosecutorial misconduct: (1) the prosecutor gave personal opinions as to the truthfulness of witnesses; and (2) the prosecutor asked Appellant to personally assess the credibility of other witnesses. As to the first allegation, Appellant claims that the prosecutor erred by stating to the jury in closing arguments: "I warned you that Brett Hobson and Ryan Hobson are liars." (R. at 2855.) Appellant contends that this violates Professional Conduct Rule 3.4(e) because it is a personal opinion unsupported by the evidence and a personal opinion as to the credibility of a witness. Furthermore, Appellant argues that because the statement came from the prosecutor, it was highly prejudicial to Appellant.

2. We also note that Appellant may have been convicted of a crime that was not charged against him. A defendant may not be found guilty of a crime that is not charged against him, and if so convicted, the verdict is contrary to law. *Yarbrough v. State,* 497 N.E.2d 206, 209 (Ind. 1986); *Sanford v. State,* 255 Ind. 542, 265 N.E.2d 701, 703 (Ind.1971); *Goldstine v. State,* 230 Ind. 343, 103 N.E.2d 438, 442 (Ind.1952).

As a preliminary matter, we note that Appellant did not object to these comments at trial, and is now, therefore, barred from raising the issue unless he can demonstrate that these comments constitute fundamental error. *Brewer v. State,* 455 N.E.2d 324 (Ind. 1983). A prosecutor, in final arguments, can "state and discuss the evidence and reasonable inferences derivable therefrom so long as there is no implication of personal knowledge that is independent of the evidence." *Kappos v. State,* 577 N.E.2d 974, 977 (Ind.Ct. App.1991), *trans. denied.* As in *Kappos,* evidence introduced at trial indicated that either the defendant was lying or that numerous other witnesses were lying. The prosecutor's comments merely pointed out the incongruities in the testimony presented at trial, concluded that someone must not be testifying truthfully, and invited the jury to determine which witness was telling the truth, an activity properly within a jury's domain. No error occurred with the prosecutor's comments here.

As to the second allegation, Appellant asks the Court to assign error because the prosecutor, during cross-examination, asked Appellant to comment on the veracity of other witnesses' answers. Appellant suggests that such questioning is improper because this Court has previously stated that when a prosecutor asks a witness whether that witness believed that another was testifying truthfully, the question constituted reversible error. *Shepherd v. State,* 538 N.E.2d 242 (Ind.1989), *reh'g denied.* Appellant objects to several series of questions, typified by the following exchange:

Q. Did you grow up in an environment where you brag about stabbing someone after the fact?

A. I didn't brag about anything.

Q. You didn't brag about that?

A. I didn't brag about anything.

Q. So if Renee Rose and Jeremiah Hosch said you were bragging about beating her and stabbing her and—

A. For one, me and Jeremiah Hosch never got along.

Q. So you thing [sic] Jeremiah Hosch is lying about that?

A. For two, Renee Rose would lie about anything.

Q. Okay, so they are both lying about that, is that correct?

A. Yes they are.

(R. at 2815–16.)

Again, we note that Appellant did not object to these comments at trial, and is now therefore barred from raising the issue unless he can demonstrate that these comments constitute fundamental error. *Brewer v. State,* 455 N.E.2d 324 (Ind.1983). A review of the record confirms our belief that no such error occurred. The present case is distinguishable from *Shepherd,* where the prosecutor asked a *state's* witness whether that witness believed that the *defendant* "was telling the truth." *Id.* at 243. As the above excerpt demonstrates, the prosecutor at Appellant's trial was asking the Appellant to assess the credibility of another witness. At this point in the trial, it was clear that the jury would have to decide between competing versions of the facts surrounding Ms. Draus' murder. The jury knew that both Appellant and the State's witness could not be telling the truth. The State's cross examination was merely an attempt to permit the jury to watch Appellant assert his side of the story once again and assess his veracity. Thus, we conclude that no prosecutorial misconduct, nor error, occurred.

## CONCLUSION

We vacate Hobson's conviction and sentence for murder, and remand for a new trial in accord with this opinion. In all other respects, the decision of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and BOEHM, JJ. concur.

SULLIVAN, J., concurs except as to part II in respect of which he would affirm the murder conviction and vacate the rape and criminal deviate conduct convictions.