## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jun 30 2016, 6:44 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Kenneth L. Zamarron
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth L. Zamarron, *Appellant*, | June 30, 2016 |
| | Court of Appeals Case No. 45A03-1601-PC-141 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, *Appellee*. | The Honorable Salvador Vasquez, Judge |
| | The Honorable Kathleen A. Sullivan, Magistrate |
| | Trial Court Cause No. 45G01-1010-PC-7 |

**Brown, Judge.**

Kenneth L. Zamarron appeals the dismissal of his petition for post-conviction relief. Zamarron raises two issues which we consolidate and restate as whether the trial court abused its discretion by denying his motion to withdraw his petition or erred in dismissing his petition with prejudice. We affirm.

## Facts and Procedural History

The relevant facts as discussed in Zamarron's direct appeal follow:

> Gregory Grudzien ("Grudzien") and Marianne Bobella ("Bobella") were co-owners of a Hammond, Indiana business. Customarily, while Bobella worked the early evening shift, Grudzien would go to Bobella's house to gather the mail and let her dog outside. On November 29, 2007, at about 8:30 p.m., Grudzien called Bobella and told her that her house had been "ransacked." (Tr. 35.) When Bobella arrived home approximately fifteen minutes later, Grudzien was lying dead in the street. He had suffered a skull fracture and multiple stab wounds. Bobella's dog was lying dead in a pool of blood under the kitchen table.
>
> The front door windows of Bobella's home had been broken; numerous items inside the house were broken or overturned. A Dodge Neon with a flat tire was parked in front of Bobella's house. Inside it were several items of Bobella's property. Grudzien's blood was on the gearshift. The Neon was registered to the step-parent of Victor Hernandez ("Hernandez").
>
> Approximately one half hour after Bobella was called home, Zamarron and Hernandez were seen walking in the middle of the street one block away from Bobella's residence. As Jack and Loretta Simmons pulled their vehicle into their driveway, Zamarron and Hernandez approached the vehicle. Zamarron pounded on the windshield and yelled. He tried unsuccessfully

to open the driver's side door. Loretta Simmons was able to drive away.

Approximately five to six blocks from Bobella's home, Ana and Doris Almaraz were seated in a vehicle at a gas station when Zamarron and Hernandez approached the vehicle. Zamarron demanded the key while Hernandez, holding an object that appeared to be a bloody kitchen knife, ordered Doris to get out of the vehicle. Ana refused to tender the key, and Zamarron doused her with gasoline. Doris began screaming, and the two men ran away.

Police officers responded to reports of these various encounters. When the officers spotted Zamarron and Hernandez, they began to run. However, they were apprehended while still covered in blood later determined to be from Grudzien. Zamarron's DNA was found inside the Bobella home, and his fingerprint was found on a bottle of liquor retrieved from the house. A shoeprint formed in Grudzien's blood near his body was made by a Converse athletic shoe; Zamarron was wearing Converse athletic shoes when he was apprehended.

*Zamarron v. State*, No. 45A05-0902-CR-83, slip op. at 2-3 (Ind. Ct. App. September 4, 2009), *trans. denied*.

[3] The State charged Zamarron with ten criminal offenses, including murder, robbery, attempted carjacking, attempted criminal confinement, burglary, and cruelty to an animal. *Id.* at 3. At the conclusion of a jury trial on November 24, 2008, Zamarron was found guilty as charged. *Id.* The trial court entered judgments of conviction on a single count of murder, robbery (reduced to a Class C felony), burglary, and cruelty to an animal, and two counts each of

attempted carjacking and attempted criminal confinement. *Id.* at 4. On January 5, 2009, Zamarron was sentenced to an aggregate term of imprisonment of ninety-seven years. *Id.* On direct appeal, Zamarron argued that the evidence was insufficient to support his convictions for murder, robbery, and cruelty to an animal, and we affirmed. *Id.* at 2.

[4]     On October 4, 2010, Zamarron filed a *pro se* petition for post-conviction relief and alleged that his trial counsel and appellate counsel were ineffective. On November 12, 2010, a public defender filed an appearance on behalf of Zamarron. On January 10, 2011, the public defender filed a motion to continue the post-conviction hearing. The next day, the court granted the motion to continue, rescheduled the hearing for May 2, 2011, and stated that "[t]his will be the last continuance of the hearing on the petition for post-conviction relief barring any extraordinary circumstances." Appellant's Appendix at 49.

[5]     On March 8, 2011, the public defender withdrew her appearance and moved for a continuance to allow Zamarron to be prepared if he wished to proceed *pro se*. On March 11, 2011, the court rescheduled the hearing to August 2, 2011, and directed the clerk to notify Zamarron that he may either hire private counsel or represent himself at the hearing.

[6]     On August 2, 2011, Zamarron orally requested a continuance. The court granted the motion and rescheduled the hearing to August 8, 2012. The court's order states that "[t]his will be the last continuance of the hearing on the

petition for post-conviction relief barring any extraordinary circumstances." *Id.* at 57.

[7] On August 8, 2012, the court held a hearing. At the hearing, Zamarron stated: "I don't have nothing to say." Transcript at 3. After some discussion, Zamarron stated that the trial court committed a sentencing error and that he could not knowingly or intentionally commit murder if he was intoxicated and that he did not have the right mind set. The court told Zamarron that he would have to set forth evidence. Zamarron stated that he asked his lawyer about the Breathalyzer "to bring it up during the trial, and he didn't, so it's ineffective of [sic] counsel." *Id.* at 8. The court asked Zamarron if he wanted it to accept the record of proceedings into evidence, and Zamarron said yes. The court indicated that it would obtain the record of proceedings from the appellate court and it would be admitted as an exhibit. The court stated that it would make him file findings of fact and conclusions of law and granted him one year to do so until August 9, 2013.

[8] On August 26, 2013, the court ordered Zamarron to show cause on or before September 25, 2013, as to why his petition should not be dismissed for failure to prosecute. On September 25, 2013, Eduardo Fontanez filed an appearance on behalf of Zamarron and a motion for extension of time to file findings of fact and conclusions of law. The court gave Zamarron until December 16, 2013, to file his proposed findings of fact and conclusions of law.

[9]     On December 20, 2013, the court entered an order observing that Zamarron had failed to timely file findings of fact and conclusions of law and ordering that he show cause on or before January 21, 2014, as to why the petition for post-conviction relief should not be dismissed for failure to prosecute.

[10]    On January 17, 2014, Zamarron filed a *pro se* motion to withdraw his petition for post-conviction relief without prejudice. On February 6, 2014, the State filed a response to Zamarron's motion to withdraw, detailed the case history, and argued that the court consider denying Zamarron's motion.

[11]    On February 6, 2014, the court denied Zamarron's motion to withdraw without prejudice and ordered that he may either withdraw his petition with prejudice or he or his attorney must file proposed findings of fact and conclusions of law on or before March 14, 2014.

[12]    On February 27, 2014, Zamarron filed multiple motions. He filed a motion for indefinite extension of time asserting that he needed the record to effectively raise and argue his issues in his facts and findings, that he believed he would have the record within the next ninety days, that he is limited to less than two hours of law library time weekly, and that he would file a certificate of readiness once he had received the record and amended his petition. He filed a Motion for Original Copy of Direct Appeal Transcript(s), Oral Arguments and Appendices, Opinions and Original Record of Proceedings. He also filed a motion requesting that the court issue an order to the Clerk of the Supreme Court and Court of Appeals for the removal of the original record. He filed a

Motion to Hear Cause as to Why Petitioner Should be Granted a Second Evidentiary Hearing, and asserted that his ability to proceed *pro se* was hindered by his assumption that once he retained counsel, his counsel would promptly begin rendering his services, but counsel failed to perform his obligatory duties and his substantial rights were jeopardized and he was placed in a perilous position. Lastly, he filed a motion for leave to amend his petition and an affidavit of indigency.

[13] The court granted Zamarron's motion for indefinite extension of time in part and gave him until June 12, 2014, to file his proposed findings of fact and conclusions of law. The court denied Zamarron's motion to issue an order to the Clerk of the Supreme Court and Court of Appeals regarding the records because "the records requested are in the possession of the Indiana Court of Appeals and this court is without jurisdiction to order its release." Appellant's Appendix at 95. The court ordered the State to file a response to Zamarron's other motions.

[14] On March 14, 2014, the State filed a response to Zamarron's motion to admit the record into evidence observing that the court had already granted Zamarron's request to admit the record at the August 8, 2012 hearing, and that it would leave it to the court's discretion whether the record should be admitted as Petitioner's Exhibit 1 given the repetitive nature of the request. The State filed a response to Zamarron's motion for leave to amend his petition detailing the case history and requesting that the court deny the motion. The State also filed a response to Zamarron's motion to hold a second evidentiary hearing and

requested that the motion be denied given the significant amount of time that had passed and because Zamarron failed to make any specific showing why a second hearing was necessary.

[15] On April 1, 2014, Zamarron, by Fontanez, filed a motion for extension of time to file findings of fact and conclusions of law. That same day, the court granted the motion in part.

[16] On April 2, 2014, Zamarron filed a reply to the State's response to his motion regarding a second evidentiary hearing in which he indicated that he was proceeding *pro se*. The court entered an order refusing to file Zamarron's motion because he was represented by counsel.

[17] On April 23, 2014, the court ordered Fontanez to appear on May 2, 2014, to show cause for his failure to comply with an earlier order that Fontanez notify the court as to whether he would remain in the case by April 15, 2014. On May 2, 2014, the court held a hearing and issued an order indicating that Fontanez was to file notice "as to determination of counsel" before May 23, 2014. *Id.* at 116. On May 21, 2014, Fontanez filed a motion to withdraw. On May 22, 2014, the court entered an order granting Fontanez's motion to withdraw and giving Zamarron until July 21, 2014, to file his proposed findings of fact and conclusions of law. On June 4, 2014, Zamarron filed a motion for continuance of one year to seek out the assistance of new counsel or "in the extreme alternative to prepare his Findings of Fact and Conclusions of Law." *Id.* at 122. That same day, the court granted Zamarron's motion in part and ordered

Zamarron to file proposed findings of fact and conclusions of law by July 21, 2015, and advised him that "this will be the last continuance granted with or without counsel." *Id.* at 124. The State subsequently filed an objection to Zamarron's request for a continuance, and the court affirmed its June 4th order.

[18] On January 26, 2015, in his direct appeal cause number, this court entered an order granting Zamarron's motion to extend release of appellate record and ordering that Zamarron's counsel either return the original record on appeal intact to the Office of the Clerk of the Court of Appeals or file a motion requesting additional time to retain the record. On April 15, 2015, this court issued an order under his direct appeal cause number granting Zamarron's motion for a copy of the record and stating the Public Defender may cause the copy to be transmitted to Zamarron for examination "provided however, that if the Public Defender has agreed to serve as counsel for the Appellant and the Appellant wishes to continue to be represented by the Public Defender, then the Appellant is not entitled to a copy of the record of proceedings at public expense and the Public Defender is relieved of the obligation to make a copy of that record, any contrary language in this Order notwithstanding." *Id.* at 203.

[19] On July 20, 2015, Zamarron, *pro se*, filed a motion to withdraw his petition for post-conviction relief without prejudice. He alleged that filing proposed findings of fact and conclusions of law would be futile in light of the fact that he appeared *pro se* at the hearing and did not call any witnesses or present any evidence. He stated that his trial counsel "failed to investigate, confront and confer with client, present codefendant's confession instead of lie." *Id.* at 174.

Zamarron suggested that the evidence to convict him was insufficient and that his act of stabbing the man was justifiable because it was done in defense of Hernandez. Zamarron asserted that his trial counsel encouraged him to testify falsely that Hernandez and another person had involuntarily intoxicated him. He stated that his appellate counsel failed to raise the argument that his sentence was inappropriate. Zamarron contended that he could not develop evidence to support his assertions in the four years since he filed his petition because he was a juvenile incarcerated as an adult, most court documents were destroyed by the Department of Correction officers, his attempt at obtaining a copy of the record on appeal had been futile until recently, his post-conviction counsel was ineffective, and the appellate decision regarding his codefendant Hernandez was not published. Lastly, he stated that delaying the proceedings would allow him to receive a copy of the record, request subpoenas for counsel, submit evidence, gain a meaningful post-conviction hearing, and provide a better petition.

[20] On August 5, 2015, the State filed a response to Zamarron's motion requesting that the court deny the motion. The State asserted that, "[a]lthough [Zamarron] has provided reasons to the court why the delay is necessary, it is apparent from his motion that [he] would be requesting to re-open evidence, even though a hearing was already held almost three (3) years ago, following a one year delay of the original hearing date." *Id.* at 227. The State argued that the court was well within its discretion to deny Zamarron's motion given the ample time that had passed. That same day, the court denied Zamarron's

motion to withdraw his petition without prejudice and directed him to file proposed findings of fact and conclusions of law or a motion to withdraw his petition for post-conviction relief with prejudice on or before October 5, 2015.

[21]    On August 10, 2015, Zamarron, *pro se*, filed an addendum to his motion to withdraw his petition for post-conviction relief without prejudice which asserted that he had received the Record on Appeal and that: (1) his trial counsel failed to tender an instruction or object when the trial court erred in permitting the jury to return a guilty verdict on murder without specifying whether the conviction was based on murder or felony murder; (2) his trial counsel failed to tender instruction to cure or object when the court erred in permitting the jury to return inconsistent verdicts of Counts I through IV and IX; (3) appellate counsel failed to raise either of the above issues as fundamental error; and (4) the trial court gave an instruction on accomplice liability but later stated that it could not tell who was the more aggressive perpetrator and sentenced Zamarron to two years more than Hernandez.

[22]    On September 16, 2015, the State filed a response to Zamarron's addendum and continued to object to Zamarron's motion and stated that the addendum did not appear to raise significant legal issues meriting the re-opening of the case for further hearings. That same day, the court entered an order denying Zamarron's motion to withdraw his petition without prejudice and ordering him to file his proposed findings of fact and conclusions of law by December 15, 2015.

[23]     On December 11, 2015, Zamarron filed a "2nd and Final Addendum" to his motion to withdraw his petition and asserted that he found additional issues after receipt of the record on appeal and additional evidence supporting these issues. *Id.* at 239. He asserted that the addendum was intended to incorporate his July 2015 motion and his August 4, 2015 addendum. On December 17, 2015, the court dismissed Zamarron's petition for post-conviction relief with prejudice for failure to prosecute. The court's order stated in part: "Instead of filing his proposed finding of fact and conclusions of law on December 15, 2015 as ordered, the petitioner AGAIN moves to withdraw his petition for post-conviction relief without prejudice, even though that request has previously been denied on two (2) occasions." *Id.* at 441. On January 14, 2016, Zamarron filed a notice of appeal. On January 15, 2016, Zamarron filed a "Corrected" version of his "Second and Final Addendum" to his motion to withdraw, and the court denied it as moot. *Id.* at 442.

## *Discussion*

[24]     The issue is whether the trial court abused its discretion by denying Zamarron's motion to withdraw his petition or erred in dismissing his petition with prejudice. Zamarron argues that the post-conviction court abused its discretion by denying his motion to withdraw without prejudice. Under the heading "Analysis," he states:

> On 8-5-15, the State, responded, did not dispute the facts, acknowledged that petitioner correctly directed the court to *Tapia v. State* (Ind. 2001), and conceded that Petitioner has provided all the reasons why delay is necessary but that petitioner should not

be allowed to reinitiate the entire process despite what *Tapia* says. The trial court's decision to deny motion is clearly against the logic and effect of the facts and circumstances before the court and has rendered a motion to withdraw without prejudice useless if one cannot reinitiate.

Appellant's Brief at 9.

[25] Also, under a separate argument heading in his brief, Zamarron argues that the post-conviction court erred by dismissing with prejudice his petition without an order to show cause "which voids the moot ruling for the Corrected 12-11-15 Second and Final Addendum." *Id.* He argues that an order to show cause why the petition should not be dismissed under Trial Rule 41(E) would have allowed him to "amend the 2nd addendum and Final with the corrected 2nd and Final addendum and file petitioner's futile proposed findings of fact and conclusions of law, thereby making the most complete record of issues for appeal."[1] *Id.* at 10.

[26] The State argues that the post-conviction court did not abuse its discretion when it denied Zamarron's motion to withdraw his petition without prejudice and that Zamarron missed deadline after deadline and filed extension after

---

[1] Ind. Trial Rule 41(E) provides: "Failure to prosecute civil actions or comply with rules. Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution."

extension, which the court was generous enough to grant. The State also argues that even if post-conviction courts must order dilatory *pro se* petitioners to show cause before dismissing their petitions, the court ordered Zamarron to show cause twice.

[27] Ind. Post-Conviction Rule 1(4)(c) provides:

> At any time prior to entry of judgment the court may grant leave to withdraw the petition. The petitioner shall be given leave to amend the petition as a matter of right no later than sixty [60] days prior to the date the petition has been set for trial. Any later amendment of the petition shall be by leave of the court.

"[T]he terms of Indiana Post-Conviction Rule 1(4)(c) give the trial court the discretion-but not a mandate-to allow the petitioner to withdraw the petition without prejudice . . . ." *Tapia v. State*, 753 N.E.2d 581, 584 (Ind. 2001). "[T]he plain language of the Rule compels us to review the post-conviction court's actions in this regard under an abuse of discretion standard." *Id.* Outside of the plain language of the rule, two additional arguments support an abuse of discretion review. *Id.* First, employing an abuse of discretion standard gives the post-conviction court the ability to curtail attempts by petitioners, including those in capital cases, to delay final judgment on their petitions. *Id.* Second, abuse of discretion is the well-established standard of review for voluntary motions to dismiss in the somewhat rare cases when such motions are subject to appeal. *Id.* We will reverse the post-conviction court's judgment only where it is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual

deductions to be drawn therefrom. *Id.* at 585. "While prejudice to the non-moving party is one indicia of an abuse of discretion, it is not a proxy for the post-conviction court's discretion in the face of plain language in the Rule to the contrary." *Id.* at 585-586 (footnote omitted).

[28] The record reveals that Zamarron filed his petition for post-conviction relief alleging that his trial counsel and appellate counsel were ineffective on October 4, 2010. Following the withdrawal of the public defender in March 2011, the court rescheduled the hearing to August 2, 2011, and directed the clerk to notify Zamarron that he may either hire private counsel or represent himself at the hearing. Following Zamarron's oral request for a continuance, the court granted his motion and rescheduled the hearing to August 8, 2012. After the hearing, the court gave Zamarron one year to file findings of fact and conclusions of law, but Zamarron failed to do so. After an extension to December 16, 2013, Zamarron again failed to file proposed findings of fact and conclusions of law. After the court extended the deadline to June 12, 2014, and then to July 21, 2014, Zamarron failed to file findings of fact and conclusions of law. On June 4, 2014, the court granted Zamarron's motion for a continuance in part and ordered him to file proposed findings of fact and conclusions of law by July 21, 2015. More than three years and three months after filing his petition for post-conviction relief, Zamarron filed a one-page motion to withdraw his petition on January 17, 2014, but did not provide any reasons in support of the motion. On July 20, 2015, Zamarron filed a motion to withdraw his petition for post-conviction relief without prejudice in which he, at least in

part, appeared to raise the argument that the evidence was insufficient which was addressed in his direct appeal. Zamarron's addendums to his motion to withdraw filed on August 10, 2015, and December 11, 2015, appear to indicate that he reviewed the record and found additional issues, but we cannot say that Zamarron develops a cogent argument on appeal that the assertions raised in the addendums require reversal.[2]

[29]     To the extent that Zamarron represented himself at the evidentiary hearing and relies upon this as a basis for relief, we cannot say that this factor weighs in favor of concluding that the post-conviction court abused its discretion. *See Tapia*, 753 N.E.2d at 587 (observing that petitioner asserted that he was having difficulty developing these claims because of his inexperience in legal matters and recognizing that the Court had consistently held that a defendant who chooses to exercise his right to proceed pro se must accept the burden and

---

[2] On appeal, Zamarron refers to his August 10, 2015 addendum to his motion to withdraw in which he cited *Hobson v. State*, 675 N.E.2d 1090 (Ind. 1996), and asserted that his trial counsel "failed to tender instruction to cure or object when trial court erred in permitting jury to return guilty verdict on murder without specifying whether conviction was based on murder or felony murder theory." Appellant's Appendix at 229. On appeal, Zamarron references only this issue and argues that *Hobson* is identical to his case. In that case, although Hobson was not charged with felony murder, the trial court instructed the jury that it could return a verdict of guilty on the charge of murder under either a murder or a felony murder theory and provided the jury a general murder verdict form. 675 N.E.2d at 1093. The Court observed that the imposition of sentences for both felony murder and the underlying felony constitutes double jeopardy, that the general verdict form left the Court with no way to determine if Hobson had been convicted of intentional or felony murder, and that it was unable to know whether one or both of certain felonies should have been merged into a felony murder charge. *Id.* at 1094. The Court concluded that it could not know whether Hobson was sentenced for both felony murder and the underlying felonies and that "[b]y sentencing consecutively on both the murder conviction and on the two potential underlying felonies without specifying which murder theory was used, the court committed error." *Id.* Unlike in *Hobson*, Zamarron's December 11, 2015 addendum contains an order detailing the jury's verdicts of guilty for Count I, murder, Count II, murder in the perpetration of robbery, and Count III, murder in the perpetration of burglary. Further, the court merged Counts II and III into Count I. We cannot say that *Hobson* is instructive.

hazards incidental to his position). With respect to Zamarron's argument that the post-conviction court erred by dismissing his petition with prejudice without an order to show cause, we observe that the court ordered him to show cause as to why his petition should not be dismissed for failure to prosecute on August 26, 2013, and again on December 20, 2013, and Zamarron did not specifically respond to these orders.[3] Under the circumstances, we cannot say that the trial court abused its discretion by denying Zamarron's motion to withdraw his petition for post-conviction relief or erred in dismissing his petition with prejudice.[4]

## Conclusion

[30] For the foregoing reasons, we affirm the post-conviction court's dismissal of Zamarron's petition for post-conviction relief.

[31] Affirmed.

---

[3] In *Holliness v. State*, 496 N.E.2d 1281, 1282 (Ind. 1986), the Indiana Supreme Court held that "dismissal after the Public Defender has made an appearance on behalf of the *pro se* petitioner and before an amended petition has been filed, can be made only after an order to show cause why the petition should not be dismissed pursuant to T.R. 41(E)." We cannot say that *Holliness* warrants reversal in this case as the public defender withdrew from the case and the court entered two orders to show cause why Zamarron's petition should not be dismissed.

[4] We note that Zamarron is not totally barred from filing another petition for post-conviction relief. Post-Conviction Rule 1(12) permits defendants to ask this court to authorize the filing of successive petitions if the petitioner establishes a reasonable possibility that he is entitled to post-conviction relief. *See Tinker v. State*, 805 N.E.2d 1284, 1285, 1290 n.6 (Ind. Ct. App. 2004) (discussing a challenge to the post-conviction court's dismissal of the petitioner's petition for post-conviction relief with prejudice and noting that the petitioner was "not totally barred from filing another petition for post-conviction relief" and citing Post Conviction Rule 1(12)), *trans. denied*.

Baker, J., and May, J., concur.