# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2018, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott L. Barnhart
Brooke Smith
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Dustin Scott Anthony Devers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 28, 2018

Court of Appeals Case No.
82A04-1708-CR-1749

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge

The Honorable Kelli Fink, Magistrate

Trial Court Cause No.
82C01-1701-F5-575

**Altice, Judge.**

## Case Summary

Following a jury trial, Dustin Devers was convicted of Level 5 felony intimidation, and he subsequently admitted to being a habitual offender. Devers presents the following issues on appeal:

> 1. Did the State commit prosecutorial misconduct rising to the level of fundamental error?

> 2. Is Devers's sentence inappropriate in light of the nature of the offense and his character?

We affirm.

## Facts & Procedural History

On January 28, 2017, Edward Brandt called 911 and reported that Devers was inside an Evansville home, armed with a knife, and had threatened the lives of all of the home's occupants. Officer John Matthews of the Evansville Police Department was the first to respond to the dispatch. Officer Matthews approached the home and found the interior side door open and the screen door closed. As he approached, Officer Mathews could hear a male voice yelling and arguing with someone. Once he reached the door, Officer Mathews could see inside the home and saw Devers and a younger woman, later identified as Devers's girlfriend, Lindsay Clark, sitting at a kitchen table. An older woman, later identified as Devers's grandmother, Donna Devers (Donna), was standing behind Clark. None of the people inside noticed Officer Matthews, and he continued to observe the situation unfold as he waited for backup to arrive.

[4] Devers continued to argue and shout at Clark while Donna tried to calm him down. Devers then grabbed a knife and said to Clark, "okay, are you ready for this? I'm going to ram this through your head, and I'm going to go away for a long time." *Transcript Vol. 2* at 16. Devers then held the knife up to Clark's throat. At about that time, several backup officers arrived, and while the officers were formulating a plan, Devers somehow fell to the ground. The officers then entered the home and Officer Matthews used his taser to subdue Devers, allowing the other officers to take him into custody.

[5] As a result of these events, the State charged Devers with Level 5 felony intimidation and filed a habitual offender allegation. A jury trial was held on June 7, 2017, at the conclusion of which the jury found Devers guilty of intimidation. Thereafter, Devers admitted the habitual offender allegation. Following a hearing, Devers was sentenced to six years for Level 5 felony intimidation, enhanced by four years based on the habitual offender adjudication. Devers now appeals.

## 1. Prosecutorial Misconduct

[6] Devers first argues that the State's comments in closing argument amounted to prosecutorial misconduct. Conceding that he failed to properly preserve this issue, Devers argues that the prosecuting attorney's allegedly improper statements resulted in fundamental error.

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the

circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. . . . To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial.

Our standard of review is different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, waived for failure to preserve the claim of error. The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." . . . Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error.

*Ryan v. State*, 9 N.E.3d 663, 667-69 (Ind. 2014) (citations, footnotes, and emphasis omitted).

[7]     At trial, Donna testified that Devers never threatened Clark, and that he had instead held the knife to his own throat and threatened suicide. On cross-

examination, the State elicited Donna's testimony that she loved her grandson and would do "just about anything" for him. *Transcript Vol. 2* at 99. Further, in closing arguments, the State asserted that the accounts given by Donna and Officer Matthews were irreconcilable, and that one of them must be lying. The State went on to ask the jury to consider Donna's relationship with Devers and whether she would lie to protect him. Specifically, the prosecuting attorney stated:

> Obviously, that's his grandmother, the defendant's grandmother, and honestly my grandmother, if I asked her to, which I would never ask her to do this, but if I asked her to, I'm sure that she would lie under oath for me, and I don't blame her frankly. I think that a grandmother is going to do anything that they can for their grandsons . . . .

*Id.* at 112. The State argued further that Donna's testimony was not credible because it conflicted with Brandt's 911 call, in which he reported that Devers had threatened to kill everyone in the house. Devers argues that these statements were improper comments on Donna's truthfulness, and amounted to prosecutorial misconduct rising to the level of fundamental error. We disagree.

[8] It is well settled that a prosecutor may properly comment on the credibility of a witness as long as the assertions are based on reasons arising from the evidence. *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006). In closing arguments, a prosecutor may state and discuss the evidence and reasonable inferences flowing therefrom so long as there is no implication of personal knowledge

independent of the evidence.  *Hobson v. State*, 675 N.E.2d 1090, 1096 (Ind. 1996).

[9]     Nothing about the prosecuting attorney's comments suggested personal knowledge independent of the evidence.  Rather, they were proper comments on Donna's credibility based on the evidence—i.e., her relationship with Devers and Brandt's 911 call.  These statements did not constitute prosecutorial misconduct, much less fundamental error.

## 2. Sentencing

[10]    Devers also argues that his ten-year sentence is inappropriate.  Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences.  *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015).   Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task.  *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).  Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7).  "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court."  *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).  "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous

traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[11] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[12] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense. Devers was convicted of a Level 5 felony and adjudicated a habitual offender. The sentencing range for a Level 5 felony is one to six years, with an advisory sentence of three years. Ind. Code § 35-50-2-6(b). Additionally, when a defendant convicted of a Level 5 felony is also found to be a habitual offender, the trial court shall sentence him to an additional fixed term between two and six years. I.C. § 35-50-2-8(i). Thus, Devers's ten-year sentence is two years short of the maximum sentence allowed under the law.

[13] With respect to the nature of the offense, we note that the record reflects that Devers held a kitchen knife to Clark's throat and threatened to stab her in the head. According to Brandt, Devers also threatened to kill everyone else in the house. Devers argues that his acts were fueled by his use of drugs and alcohol as well as grief over Clark's recent miscarriage. Even if we accept Devers's arguments in this regard, these facts do little if anything to mitigate his culpability.

[14] Moreover, Devers's character standing alone is more than sufficient to justify the sentence imposed. Devers's criminal history is astonishingly long and includes nine prior felony convictions and numerous misdemeanor convictions. As a minor, Devers was adjudicated delinquent five times and once waived into adult court. Much of Devers's criminal history has been violent, his probation has been revoked three times, and he was on parole when he committed the instant offense. Devers admitted that he had used methamphetamine nearly every day since 2008 and was injecting approximately half a gram of methamphetamine daily at the time of his arrest in this case. Devers notes that he has three children and has been ordered to pay child support, but he does not direct our attention to any evidence that he has paid support as ordered or been involved in his children's lives. Devers also notes that he admitted the habitual offender allegation, but a guilty plea does not rise to the level of significant mitigation where the evidence against the defendant is such that the decision to plead guilty is "purely pragmatic." *Abrajan v. State*, 917 N.E.2d 709, 713 (Ind. Ct. App. 2009). Devers admitted his habitual offender status only after a jury

trial on the intimidation charge, and given the nature and extent of Devers's criminal history, it is clear that the State would have been prepared to try the habitual offender allegation to the jury as well. Devers's admission appears to have been a pragmatic one, and it did not save the State the time and expense of trial preparation. *See Jackson v. State*, 973 N.E.2d 1123, 1131 (Ind. Ct. App. 2012) (noting that a habitual offender admission following a trial does not provide the same benefits to the State and victims as a guilty plea to the underlying crime), *trans. denied*. For all of these reasons, we cannot conclude that Devers's ten-year sentence is inappropriate.

[15] Judgment affirmed.

[16] May, J. and Vaidik, C.J., concur.